# MIDDENDORF, WILLIAMS & COMPANY, INCOR-PORATED,

## *vs.*

# THE ALEXANDER MILBURN COMPANY, A BODY CORPORATE.

*Stockbrokers' agreements to aid in floating stock: breach; damages; duty of plaintifffs to minimize.  Prayers.  Contracts: vagueness; when not to be enforced.*

Courts are reluctant to reject an agreement regularly and fairly made as unintelligible or insensible; agreements will be sustained if the meaning of the parties can be ascertained, either by express terms or by fair implication.          p. 387

But if an agreement be so vague and indefinite that it is not possible to collect from it the full intention of the parties, it is void; for neither the court nor the jury can make an agreement for the parties.          p. 388

A firm of bankers and brokers agreed with the plaintiff corporation for a substantial financial consideration to use all their facilities to float and effect the sale of certain shares of the preferred stock of the plaintiff coporation; the defendant assumed the obligation, upon the condition, however, that the plaintiff corporation should cause its charter to be amended in various particulars, and also that it should acquire ownership of certain domestic and foreign letters patent, which conditions the plaintiff corporation complied with; but the defendants refused and failed to carry out their contract; *held*, that the defendants were liable to the plaintiff corporation for all damages suffered by it that were the direct and natural result of the unjustifiable refusal and failure of the defendants to perform their agreement.          p. 390

To enable the plaintiff to recover more than nominal damages for the breach of such a contract, it would be necessary to show that the defendants could have sold the stock had they made a reasonable effort to do so; if it had made such effort and failed, there could have been no recovery. p. 392

A prayer is defective which fails to submit such fact to the finding of the jury. p. 392

A loss sustained by the plaintiff corporation by the lapsing of the patent rights which it had acquired, caused by its inability to develop or preserve the patents by the payment of certain charges that were required to be paid from time to time to preserve them, can not be recovered, because such loss or damage was not a natural and direct result of the alleged breach. p. 394

Upon a breach of the contract, it was the duty of the plaintiff corporation to make all reasonable efforts to minimize its loss, and to find another who would sell the stock or raise the money on terms equally as advantageous as those contained in the agreement with the defendants. p. 395

If, however, after such efforts the plaintiff was compelled to pay more for obtaining said money or selling said stock than it would have cost had the defendant company complied with its agreement, the true measure of damages would have been the difference between the actual cost to it and what it would have cost by the defendants' agreement. p. 395

If the amendment to the plaintiff corporation's charter, obtained at the instance of the defendant corporation, were not available under the only method by which money could be obtained, then evidence of the cost of such amendments might, under some circumstances, be offered in evidence to show the actual cost to which the plaintiff corporation was put to in obtaining the money. p. 396

*Decided April 23rd, 1919.*

Appeal from the Superior Court of Baltimore Ctiy. (DAWKINS, J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner and Constable, JJ.

*Enos Stockbridge* and *Vernon Cook,* for the appellant.

*J. Kemp Bartlett* (with whom was *J. Kemp Bartlett, Jr.,* on the brief), for the appellees.

Pattison, J., delivered the opinion of the Court.

The appeal in this case is from a judgment recovered in the Superior Court of Baltimore by the appellee, The Alexander Milburn Co., a corporation engaged in the business of manufacturing searchlights used by contractors and others and generators for producing oxygen and acetylene gases for welding purposes, against the appellant, a brokerage corporation. Both plaintiff and defendant are located and doing business in the City of Baltimore.

The declaration upon which the suit was brought contains the usual common counts and one special count. A demurrer to the special count was overruled and the pleas of never promised and never indebted as alleged were filed to the declaration.

In the course of the trial, twenty-eight exceptions were taken to the rulings of the Court. Twenty-seven of these were upon the admission or rejection of evidence and one upon the prayers.

We will first dispose of the demurrer to the special count of the declaration. It is claimed by the appellants that said count does not state a good cause of action in that it is "too vague, indefinite and uncertain to amount to a legally binding contract."

"Courts very reluctantly reject an agreement regularly and fairly made as unintelligible or insensible. It will be sustained if the meaning of the parties can be ascertained, either from the express terms of the instrument or by fair implication." *Elliott on Contracts,* Vol. 1, sec. 170. "The law does not favor, but leans against the destruction of contracts be-

cause of uncertainty. Therefore the courts will, if possible, so construe the contract as to carry into effect the reasonable intention of the parties if that can be ascertained." 6 R. C. L. 645.

The rule of law upon this subject is nowhere better stated or more clearly defined than in *Thomson* v. *Gortner,* 73 Md. 482, where it is said: "The law is too well settled to admit of doubt, that in order to constitute a valid verbal or written agreement, the parties must express themselves in such terms that it can be ascertained to a reasonable degree of certainty what they mean. And if an agreement be so vague and indefinite that it is not possible to collect from it the full intention of the parties, it is void; for neither the Court nor the jury can make an agreement for the parties. Such a contract can neither be enforced in equity nor sued upon at law." *Delashmutt, Ex'r,* v. *Thomas,* 45 Md. 140; *Gelston and Meyenberg* v. *Sigmund,* 27 Md. 334; *Myers* v. *Forbes,* 24 Md. 598, and *Howard, et al.* v. *Carpenter,* 11 Md. 259.

The rule of law by which the courts are to be governed in these cases is well and clearly established, but the difficulty is in applying it to the facts of each particular case.

By the agreement set out in the declaration, the defendant was to set in motion the facilities available to it for the sale of $46,000 of 7% preferred stock of the plaintiff corporation and that it would make a *bona fide* effort to sell said stock, utilizing all the facilities available to it, giving to the plaintiff the benefit of the financial standing, the financial connections, and the experience of the defendant in financing enterprises and selling stock and other securities, for which service it was to receive as and for its compensation the sum of $5,000. This obligation, however, was assumed by the defendant upon the condition that the plaintiff corporation should promptly cause its charter to be amended by increasing its capital stock from $62,000 to $200,000 and by providing for the issuance of $46,000 of 7% preferred stock, with convertible privileges, and amend its by-laws by providing for two additional directors.

In addition to these requirements it was to acquire ownership of certain domestic, Canadian, and foreign letters patent and patent rights then owned by Alexander F. Jenkins, president of the plaintiff corporation, and it was also to enter into a contract of employment with said Jenkins for a period of three years.

The declaration alleges that such amendments to the charter and by-laws were promptly made, that said letters patent and patent rights were promptly acquired by purchase, and that a contract of employment was entered into with said Jenkins, pursuant to said agreement. When this had been done, the defendant was notified of the same by the plaintiff and was called upon "to set in motion the defendant's facilities for selling said stock," but "the defendant refused and does still refuse to make any effort whatever to sell said stock and has refused and still refuses to perform its part of said agreement, notwithstanding repeated demands made upon it by the plaintiff."

The declaration further alleges: "That the aforesaid issue of 7% preferred stock, with convertible privileges, would have been sold at and for the value of said shares if the defendant had performed its part of said agreement."

It is then alleged that the plaintiff in performing its part of said agreement "incurred and paid a large amount of expense and assumed obligations it would not otherwise have incurred, paid or assumed; that incurring and paying such expense and assuming such obligations, the plaintiff suffered and sustained a loss which it would not have suffered or sustained but for the undertaking on the part of the defendant to do and perform the acts and things hereinbefore recited to be done and performed on the part of the defendant and the defendant's breach of said undertaking."

There should, we think, be no difficulty in ascertaining the meaning of the parties as expressed by the agreement. The defendant, as alleged in the declaration, was at the time of making said agreement and prior thereto, established in the private banking and brokerage business, possessing extensive

facilities and financial connections for the financing of enterprises similar to that in which the plaintiff was at the time engaged.

The defendant was not to purchase the stock mentioned, nor did it guarantee its sale, but it was to set in motion all of its available facilities and use all its financial connections, as well as its knowledge acquired by long experience, in a reasonable and *bona fide* effort to sell said stock. That such was the meaning of the parties to the agreement can be ascertained to a reasonable degree of certainty from its express terms as set out in the declaration.

The agreement does not state with particularity every thing that the defendant was to do, or name every facility that was to be employed by it, or state the length of time it was to continue its efforts in an attempt to sell the stock, nor was it essential to its validity, that it should have so stated.

The agreement states with sufficient definiteness not only what the plaintiff was to do, but also, what was to be done by the defendant. It was not only to offer the stock for sale, but in connection with that offer it was to set in motion all its available facilities and was to use its financial associations or connections, helpful to it, in the sale of the stock.

The agreement embraces more than a mere offer to render personal services. It includes within its provisions the use of what in this case may be considered valuable assets of the defendant that would largely aid in the accomplishment of the object for which such services were to be rendered.

The declaration alleges that the defendant refused and failed to do those things that it had agreed to do, and that had it done so the stock would have been sold at and for the par value of its shares. Upon the allegations contained in the declaration the defendant is, in our opinion, liable to the plaintiff for all damages suffered by it that were the direct and natural result of an unjustifiable refusal and failure by the defendant to perform its part of the agreement, or for special damages sustained by it, under special circumstances, under the rule hereinafter stated.

We have carefully examined the cases cited by the defendant as bearing upon this branch of the case, but we do not regard them as analogous to the case before us. The demurrer was properly overruled.

The Court granted the prayer of the plaintiff and the 4th, 5th, 7th, 8th and 11th prayers of the defendant, but refused its 1st, 2nd, 3rd, 6th, 9th and 10th prayers.

The jury were instructed by the plaintiff's prayer that if they found the defendant had agreed with the plaintiff to offer for sale its preferred stock mentioned in the evidence "and that the defendant refused to make any effort to sell said shares of stock, then the verdict of the jury should be for the plaintiff, and if the jury shall find from the evidence that defendant required that the plaintiff as a condition precedent to the offering of the plaintiff's preferred stock for sale, that the plaintiff should purchase certain patent rights mentioned in the evidence, and should cause its charter and by-laws to be amended, and if the jury shall find from the evidence that the plaintiff purchased such patent rights and caused its charter and by-laws to be amended, and shall further find from the evidence that by reason of the failure of the defendant to offer such shares for sale (if the jury shall find such failure from the evidence), the plaintiff was unable to develop or preserve such patent rights, so that the sum paid therefor was lost to the plaintiff (if they shall so find), and that the aforesaid amendments to its charter and by-laws were unsuited to the requirements of the Industrial Corporation of Baltimore City under the financing of the plaintiff which was conducted by said last mentioned company (if the jury find such financing to have been conducted by said company), then according to the true measure of damages applicable to this case the plaintiff is entitled to recover the value of the shares of stock which the jury shall find from the evidence it issued for said patent rights together with the legal and other expenses incurred and paid by it in procuring the amendment of its charter and by-laws."

It will be seen that this prayer, unlike the declaration, does not require the jury to find that had the defendant made an effort to sell the stock he could have sold it. To enable the plaintiff to recover more than nominal damages, it should have been shown that the defendant could have sold the stock had it made a reasonable effort to do so, for had he made such effort and had failed there could have been no recovery at all. The prayer is therefore defective because of its failure to submit such fact to the finding of the jury.

It is also defective because of the instruction therein contained that if the jury should find "that defendant required the plaintiff as a condition precedent to the offering of the plaintiff's preferred stock for sale, should purchase certain patent rights mentioned in the evidence, and the plaintiff purchased such patent rights, and that by reason of the failure of the defendant to offer such shares for sale, the plaintiff was unable to develop or preserve such patent rights so that the sum paid therefor was lost to the plaintiff, then according to the true measure of damages applicable to this case, the plaintiff is entitled to recover the value of the shares of stock which the jury shall find from the evidence it issued for such patent rights."

If the defendant was liable to the plaintiff at all for the loss sustained by it resulting from the plaintiff's inability to develop or preserve the patent right so bought by it, caused by the plaintiff's failure to receive the proceeds from the sale of stock which the defendant was to offer for sale, the measure of such loss or damages would not be the value of the stock that it issued for those patent rights, but if liable at all it would be the value of such patent rights. The value of the stock issued for such rights might reflect upon their value, but the value of the stock would not be the measure of damages. In our opinion, however, the defendant was not liable at all for such alleged loss. This Court in the case of *Winslow Elevator Company* v. *Hoffman,* 107 Md. 635, quoting from *Hadley* v. *Baxendale,* 9 Exch. 341, stated the rule of damages in cases of breach of contract to be this: "When

two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, *i. e.,* according to the usual course of things, from such breach of contract itself, or, such as may reasonably be supposed to *have been in the contemplation of both parties* at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made, *were communicated* by the plaintiff to the defendant, and thus known to both parties, the damage resulting from the breach of such contract which they would reasonably contemplate would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, for such a breach of contract. For had the special circumstances been known, the parties might have specially provided for the breach of contract by special terms as to the damages in that case, and of this advantage it would be very unjust to deprive them."

And as said by JUDGE ROBINSON, speaking for this Court, in *Webster* v. *Woolford, supra,* 81 Md. 329 : "The first part of the rule as thus laid down applies to cases in which the damages are the direct and natural result of the breach of the contract, and which the law presumes to have been in contemplation of both parties. The latter part of the rule applies in cases where special damages are claimed under special circumstances made known by the plaintiff to the defendant at the time the contract was made; and in such cases the plaintiff is entitled to recover such damages as may reasonably be supposed to have been in contemplation of both parties in view of the circumstances thus disclosed."

The loss sustained by the plaintiff by the lapsing of the patent rights caused by its inability to develop them or to preserve them by the payment of certain charges that were required to be paid from time to time in order to keep them alive, can not be recovered under the first part of the rule for it is too clear to require discussion that such loss or damage was not the natural and direct result of the alleged breach.

Nor can such special or consequential damages be recovered under the latter part of the above stated rule, for, as stated in *Winslow Elevator Co.* v. *Hoffman, supra*: "The rule is never applied unless the evidence warrants the conclusion that the contract was, to some extent, based upon the special circumstances out of which the injury arose. To apply this rule the evidence must show that the knowledge must be brought home to the party sought to be charged under such circumstances that he must know that the person he contracts with reasonably believes that he accepts the contract with the special conditions."

The record in this case does not disclose that the knowledge of the special circumstances out of which the injury arose, to wit, the necessity of paying the charges upon the patent rights in order to keep them alive or prevent them from lapsing, and the inability of the plaintiff to meet such payments, were brought home to the defendant under such circumstances that it must have known that the plaintiff reasonably believed that the defendant accepted the contract with these special conditions.

The object and purpose of the appellant corporation was to obtain additional money with which to manage and conduct its business, and to accomplish such object or purpose they decided to issue and sell, if they could, $46,000 of preferred stock. To this end they called upon the defendant corporation to aid them in their efforts.

To do as proposed, it was necessary for them to amend their charter. It was suggested by the defendant corporation, as a condition precedent to its offering the stock for sale, that they should increase the number of directors from three

to five, and likewise issue more common stock. To do these things it required a further amendment of its charter, and it was so amended.

After such amendments were made the defendant corporation failed to sell the preferred stock, and the plaintiff was required to go elsewhere for assistance in obtaining the additional money required for their business. It, after making application to a number of brokers and bankers, succeeded in obtaining the assistance of the Industrial Corporation of Baltimore. It seems, however, that the plans adopted by that corporation differed from those decided upon by the defendant corporation, that were in part suggested by the plaintiff, and it is claimed by the plaintiff that the amendments or at least some of the amendments so made, were unsuited to the requirements of the Industrial Corporation under its plan for financing the plaintiff; the cost of which they contend should be borne by the defendant corporation.

It being shown that there was a breach of the contract by the defendant and the plaintiff was compelled to go elsewhere for assistance in raising the money required by it, it was its duty to make all reasonable efforts to minimize the loss, it had sustained, if any, by reason of such breach and to find another who would sell the stock or raise the money on terms equally as advantageous as those contained in the alleged agreement with the defendant. If, however, after making such efforts the plaintiff was compelled to pay more for obtaining said money or selling said stock than it would have cost it had the defendant company complied with its alleged agreement, then in such case, the true measure of damages would be the difference between what it actually cost it to secure the money or sell the stock and what it would have cost it had the defendant performed its part of the alleged agreement.

Under such measure of damages the instruction contained in said prayer as to the rights of the plaintiff to recover the expenses incurred and paid by it in procuring the amendments of its charter and by-laws was wrongfully granted. But

if it be shown that there was a breach of the agreement by the defendant, and that the cost of the amendments was imposed upon the plaintiff by the defendant as a condition precedent to its offering the stock for sale, and that such amendments were not available under the only method by which the money could be obtained, then evidence of the cost of such amendments so incurred by the plaintiff might under some circumstances be offered in showing the actual cost to which the plaintiff was put in obtaining the money.

The defendant's first prayer, which erroneously treats the transaction between the parties as a sale, was properly rejected.

Its second prayer asked the Court to instruct the jury that "there is no evidence legally sufficient to establish the making of any contract of the kind and character alleged in the plaintiff's declaration, to wit, a contract by the defendant to set in motion its facilities for the sale of the preferred stock of the plaintiff or to make a *bona fide* effort to sell the same, that there is a fatal variance between the contract as alleged in the declaration and the alleged contract described in the testimony of the witnesses;" and asks that a verdict be directed for the defendant. Without stating the evidence offered, there is, we think, evidence sufficient to go to the jury tending to establish the agreement set out in the declaration, and that there is no fatal variance between it and the one described in the evidence. Therefore, we find no error in the Court's ruling upon this prayer.

The defendant's third prayer was properly refused for the reasons we have stated in sustaining the Court's action upon the demurrer to the declaration.

The defendant's sixth prayer we think was too broad and comprehensive in its terms and was therefore properly refused.

The ninth prayer should have been granted for reasons already stated.

The defendant's first motion to strike out testimony, we think, was properly refused.

The 1st, 2nd, 3rd, 4th, 17th and 18th bills of exceptions are to admission of testimony. This evidence was properly admitted for the reasons we have stated in affirming the Court's ruling in rejecting the defndant's first prayer.

The 5th, 6th and 7th bill of exceptions relate to the question of amendments made in the plaintiff's charter. This evidence would seem to be admissible if followed up by other essential evidence, as tending to show that the plaintiff was required to go elsewhere to obtain the money and the actual cost to it in obtaining said money because of the alleged breach of the contract by the defendant. Nor do we find any fatal error in the Court's ruling upon the 8th, 9th, 10th, 11th and 12th exceptions.

We do not deem it necessary to discuss the 13th, 14th, 15th and 16th bills of exceptions in view of what we have said of the plaintiff's supposed right to recover the alleged loss sustained by it in the lapsing of the foreign patent devices.

The evidence introduced in the 19th, 20th, 21st, 22nd and 26th exceptions was, we think, not relevant to the issues, and should not have been admitted.

Because of the errors we have mentioned, the judgment will be reversed and a new trial awarded.

*Judgment reversed and new trial awarded,*
*with costs to the appellant.*