STANCE J. TROTTER, ET UX., *v.* JOSEPH P. LEWIS

[No. 50, October Term, 1945.]

530

*Decided January 8, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Walter L. Green* and *Fred A. Maltby,* with whom were *Cornelius Whalin* and *Green & Powers* on the brief, for appellants.

*Robert W. McCullough,* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This suit was brought by Joseph P. Lewis, a laundryman, to obtain specific performance of a contract executed on March 1, 1939, in which Stance J. Trotter, a real estate dealer, agreed (1) to lease him lots 1 and 2 in Block O ("office building to south not included in this lease") in Fairmont Heights, Prince George's County, for the term of five years for rent of $20 per month; (2) to give him during the term of the lease "an option on sale of said premises * * * and buildings thereon, price not to exceed $2,500, with interest not exceed 6% per annum"; and (3) to permit him to build and do whatever else he finds necessary on the lots ("office building on south side not included in this lease") to house any laundry machines and equipment.

On February 19, 1944, shortly before the expiration of the five-year term, Lewis tendered $2,500 in acceptance of the option, but Trotter refused to convey. Lewis thereupon brought suit against Trotter and his wife, Rosa L. Trotter, who demurred to the bill of complaint on the

ground that she did not sign the contract. At the trial of the case complainant stated that he was willing to accept a deed from defendant alone and pay the full amount of the purchase price. The chancellor accordingly dismissed the bill as to the wife, and ordered the husband to convey his interest in the property to complainant upon payment of $2,500, with interest from March 1, 1944, and $101.10 to pay for arrears in rent. The husband is appealing from that decree.

First, appellant attacks his contract because the description of the optioned property is not certain. While the lots are plainly designated and can be identified on the plat, he says that he inserted the exception of the office building in two places in the contract, but it was actually his intention to exclude the office building from the option also. One of the fundamental rules of equity is that the Court will not decree specific performance of a contract unless it is definite and certain in all its terms and free from all ambiguity. Gelston v. Sigmund, 27 Md. 334, 343; Dixon v. Dixon, 92 Md. 432, 438, 48 A. 152; Texas Co. v. United States Asphalt Refining Co., 140 Md. 350, 117 A. 879; Anshe Sephard Congregation v. Weisblatt, 170 Md. 390, 185 A. 107; Applestein v. Royal Realty Corporation, 180 Md. 274, 24 A. 2d 684. In this case the contract executed by both parties shows an intention that, during the term of the lease, the lessor had the privilege of using the office building, which was attached to the laundry building, whereas the lessee was given the option to buy "said premises * * * and buildings thereon." It was the lessor himself who made the interlineations in the contract. While the contract is crudely drawn, we must assume that a landlord, who deals in real estate, and who reads a contract and revises it in his own handwriting, understands what it plainly provides. As the Supreme Court of Missouri said in Tebeau v. Ridge, 261 Mo. 547, 170 S. W. 871, 874, a landowner who gives a lessee an option to purchase the land, cannot defeat specific performance merely because the op-

tion does not dovetail "in logical precision and grammatical and rhetorical construction with what preceded and with what followed it." It appears from the record that the lessee, finding that the laundry building was not large enough for his machinery, constructed another building, which cost him approximately $1,000. The lessor witnessed the progress of the work from day to day. It would be inequitable to allow him, after he witnessed the construction of the building and acquiesced in all the improvements, to reap the benefit therefrom on the ground that he did not give careful attention to the preparation of the contract and had never intended to give the lessee an absolute option to purchase the premises and buildings thereon.

Second, appellant complains that he failed to include a clause, as he had intended to do, fixing the amount of partial payment and other amounts payable thereafter, and hence the option did not fully express his intention. It is well established that where a contract has been entered into by competent parties, it is not within the power of either party to rescind it without the consent of the other party, in the absence of fraud, duress or undue influence, or unless the equities are such that he should not be permitted to enforce it. If any doubt arises from the language of a contract as to the intention of the parties, extraneous evidence may be admitted to aid the Court in comprehending its meaning; but it is a general rule that parol evidence is inadmissible to vary or contradict the terms of a written instrument. All prior and contemporaneous negotiations are merged in the written instrument, which is treated as the exclusive medium for ascertaining the extent of their obligations. We specifically hold that a written contract of sale is conclusive as to the time, mode and terms of payment, and such provisions cannot be varied or contradicted by parol. *Markoff v. Kreiner*, 180 Md. 150, 23 A. 2d 19; *Hoffman v. Chapman*, 182 Md. 208, 34 A. 2d 438; *McKeever v. Washington Heights Realty Corporation*, 183 Md. 216, 37 A. 2d 305; *Coster v. Arrow Building & Loan*

*Ass'n,* 184 Md. 342, 41 A. 2d 83. Moreover, the evidence does not show that the written contract in this respect differs appreciably from the intention of either or both of the parties.

Third, appellant contends that the stipulation of the price "not to exceed $2,500" is indefinite and lacking in mutuality. In any case of contract based upon an option, the remedy of specific performance is invoked not on the theory that the option itself is enforceable, but on the theory that the option is a continuing offer to sell and, when duly accepted by the optionee, becomes a definite contract mutually binding and enforceable. *Willard v. Tayloe,* 8 Wall. 557, 19 L. Ed. 501; *Thomas v. Gottlieb, Bauernschmidt, Straus Brewing Co.,* 102 Md. 417, 424, 62 A. 333. When an optionee duly signifies his purpose to accept an option for the purchase of real estate, and tenders the amount of the purchase price if required, he is entitled to specific performance of the contract. The objection that the original agreement was lacking in mutuality is without merit, for when the optionee exercises an option the agreement becomes binding upon both parties. *Brewer v. Sowers,* 118 Md. 681, 688, 86 A. 228. Hence, we find no objection to an option to purchase property for not more than a certain sum. *Hagan v. Dundore,* 185 Md. 86, 43 A. 2d 181. It is also recognized that where an option is incorporated in a lease, the privilege of becoming a purchaser of the property may be treated as part of the consideration supported by the rent, and the option can be held supported by valuable consideration. *Keogh v. Peck,* 316 Ill. 318, 147 N. E. 266, 38 A. L. R. 1151; *49 Am. Jur., Specific Performance,* Sec. 120.

Fourth, appellant says the contract is indefinite because it does not fix the time of settlement. The law is clear that, where a contract of sale plainly provides for extension of credit for all or any part of the purchase money, the time when the deferred payment is to be made is an essential part of the contract; and if the time for payment is not specified, the contract is uncertain

and incomplete and cannot be specifically enforced. *Buck v. Pond,* 126 Wis. 382, 105 N. W. 909. But it is equally clear that time of payment is not necessarily an essential provision in a contract of sale, for the two acts of paying the purchase price and making delivery of the deed are concurrent acts, and if no time is stipulated it is usually implied that either party is given the right to demand performance of the other and to place him in default if he fails to perform within a reasonable time. Therefore, we hold that, where a contract of sale does not show an intention that the purchaser is to have an extension of credit, the contract may be specifically enforced although it does not fix a definite time when the transaction is to be consummated, because the time of settlement can be made certain by an offer to deliver the deed or by a tender of the purchase price. *Penney v. Norton,* 202 Ala. 690, 81 So. 666; *Ullsperger v. Meyer,* 217 Ill. 262, 75 N. E. 482, 2 L. R. A., N. S., 221, 3 Ann. Cas. 1032; *Bartz v. Paff,* 95 Wis. 95, 69 N. W. 297; *Leaf v. Codd,* 41 Idaho 547, 240 P. 593. Of course, we realize that what constitutes a reasonable time may be a matter of proof of all the facts and circumstances surrounding the particular case. But specific performance may be decreed if the terms of the contract are so expressed that the Court can determine with reasonable certainty what are the duties of the parties and the conditions under which performance is due. The American Law Institute states: "The usual aids to interpretation will be availed of by the Court, just as in the case of enforcement by other remedies. Expressions that at first appear incomplete or uncertain are often readily made clear and plain by the aid of common usage and reasonable implications of fact. Apparent difficulties of enforcement due to uncertainty of expression may disappear in the light of courageous common sense." 2 *Restatement, Contracts,* Sec. 370.

Fifth, appellant claims that the option was forfeited because appellee was about three months in arrears in rent on December 1, 1943. When time is of the essence.

of a contract of sale, a court of equity will ordinarily not grant specific performance where the purchaser has failed to make payment within the time specified by the contract. Likewise, an option, to form the basis for a binding contract, must be accepted within the time set for acceptance. In the instant case the lessee had the right to exercise the option at any time during the term expiring on March 1, 1944, but the lessor had the right to repossess the premises in event of default in payment of rent. Nevertheless, the lessor never did repossess the premises. He served a notice to quit on January 28, 1944, one month before the expiration of the term, but this was the usual landlord's notice to quit at the expiration of the term. At common law no notice to quit is necessary to dissolve the relation of landlord and tenant in a tenancy for a definite period of time, because such a tenancy terminates by lapse of that time, and the landlord may at once resume possession. But in order to exercise the summary remedy provided by statute for the repossession of land after the expiration of a definite term, the landlord must give written notice one month before the expiration of the term to the tenant to remove at the end of the term. Code 1939, Art. 53, Sec. 1; *Smith v. Pritchett,* 168 Md. 347, 178 A. 113, 98 A. L. R. 212. It is our conclusion that the term of the lease in this case did not end until March 1, 1944, and the lessee had the right to accept the option at any time prior to that date. The lessor accepted the rent for nearly five years, and also made collections for the lessee and applied the money to the rent account. The lessee's lack of punctuality in payment of rent did not disentitle him to specific performance, for the Court can effectuate the general object of the parties by enforcing the contract and ordering the purchaser to compensate the vendor for any loss due to the delay. Interest is ordinarily regarded as adequate compensation for loss caused by another's failure to pay money when due. *Soehnlein v. Pumphrey,* 183 Md. 334, 37 A. 2d 843. Of course, a purchaser who seeks specific performance must be willing and ready to

perform his part of the contract. But the purchaser in this case is ready and willing to pay the entire amount of $2,500 in cash, and also whatever sum is due for rent.

Sixth, appellant earnestly argues that his contract is not binding because his wife has refused to join in a deed. It is a basic right of a wife to own her inchoate dower interest in her husband's property, and equity will not, upon a husband's request, order the sale of his property free from his wife's dower, such an interest being one of which she can be divested only with her consent. *Roth v. Roth,* 144 Md. 553, 125 A. 400. The reason for this policy is the wise safeguard of the law to protect married women from coercive alienations, when the purchaser is aware of the risk incurred and cannot argue that the refusal of the wife is an unexpected difficulty. 2 *Story, Equity Jurisprudence,* 14th Ed., Sec. 1016b; *Aiple-Hemmelmann Real Estate Co. v. Spelbrink,* 211 Mo. 671, 111 S. W. 480. Yet if a person agrees to buy land from a married man without obtaining the signature of his wife, the Court may decree specific performance against the vendor, though the wife refuses to join in the conveyance to relinquish her dower, if the purchaser is willing to pay the purchase price without any abatement and accept a deed from the vendor without his wife's signature. *Melamed v. Donabedian,* 238 Mass. 133, 130 N. E. 110; *Clark v. Seirer,* 7 Watts, Pa. 107, 32 Am. Dec. 745; *Ford v. Street,* 129 Va. 437, 106 S. E. 379; *Kuratli v. Jackson,* 60 Or. 203, 118 P. 192, 1013, 38 L. R. A., N. S., 1195. In the case at bar the purchaser announced that he was willing to accept a deed from the husband alone and pay the full amount of the purchase price. We, therefore, find no objection to a decree for specific performance against him alone.

Appellant insists that, under the Maryland Inheritance Law, the decree in this case may have the effect of eventually forcing his wife, if she outlives him, either to renounce her dower in the property in question or else be satisfied to take only the dower in all real estate which he may own at the time of his death. Our statute

provides that a widow shall take as heir the same share or proportion in any lands in Maryland belonging to the deceased husband that she takes as distributee in his personal property. The statute does not abolish the estate known as dower, but any widow shall be presumed to have waived and surrendered the right of dower, and to have accepted the provisions of the statute, unless within the period of six months after the death of her husband she shall file an election to take the dower to which she is entitled, in which case she shall be considered to have renounced any other right in her husband's lands in this State. Acts of 1916, Ch. 325; Code 1939, Art. 46, Secs. 2, 3, 4; *Pearre v. Grossnickle,* 139 Md. 1, 114 A. 725. The statute expressly states that nothing contained therein shall be taken as giving a husband any right of conveyancing, by deed *inter vivos,* his real estate free of any right of his wife's dower therein without the joinder of his wife. Code 1939, Art. 46, Sec. 3. The natural implication of this proviso is that a husband continues to have the same right to convey his own interest in his real estate as he had prior to the passage of the statute. The widow's right to elect is given by statute, and if she elects not to take dower she then has only a distributive share in the property owned by her husband at the time of his death. If her husband has conveyed any of his property without her signature, she can, if she chooses, take her dower in that property, but the statute gives her no distributive right in it, and she must make her choice to take her dower in all his property, including that conveyed without her signature, or take only her distributive share in that property of which he died seized and possessed. That is, her election given by the statute, and she has no election other than the statutory one.

Finding that the option was duly accepted by appellee, and that the contract is sufficiently definite to merit specific performance, we affirm the decree of the chancellor ordering appellant to convey his interest in the property.

*Decree affirmed, with costs.*