LEO J. NAUGHTON, ET AL., *v.* JAMES E. CLUBB, ET AL.

[No. 99, October Term, 1946.]

*Decided April 23, 1947.*

*Rehearing denied June 11, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Cornelius Whalin,* with whom was *Walter L. Green* on the brief for the appellants.

Submitted on brief by *Thomas Elmo Jones* and *L. Harold Sothoron* for the appellee, James E. Clubb.

No appearance and no brief for the appellees, Weyman G. Edwards and wife.

DELAPLAINE, J., delivered the opinion of the Court.

James E. Clubb brought this suit for specific performance to compel Weyman G. Edwards and Mary S. Edwards, his wife, residents of the City of Washington, to convey to him their real estate situated at 4510 Suitland Road in Prince George's County.

On the morning of March 1, 1945, Clubb, who was the lessee of the property, was notified by Mrs. Edwards by telephone that she and her husband had decided to sell the property, and offered it to him for $5,500, but wanted his acceptance by 6 o'clock that evening, as they were leaving the city. In the afternoon Clubb conferred with the cashier of the Clinton Bank and with an attorney. He was anxious to buy the property, and while he had no money to pay for it, he thought that he could arrange to finance the transaction. That evening he called to see Mr. and Mrs. Edwards at their apartment on P Street in Washington; and as an evidence of good faith made a deposit of $10, for which Mrs. Edwards gave him the following receipt: "Received from Mr. J. E. Clubb $10.00 on condition that we receive $4500.00 in cash and balance of $1000 note for property at 4510 Suitland Road, 1.74 acres known as The Hess Place." The receipt was signed by Mary S. Edwards, but not by her husband.

On March 3, Mrs. Edwards phoned Clubb again to inform him that her husband had received another offer for the property, and that they had decided not to sell to him. She also said that she would return his $10. On March 5 the owners executed a contract to sell the property to Edward A. Garvey for $5,100. While this was $400 less than the price that Clubb had agreed to pay, they realized that it was doubtful whether Clubb would be able to borrow $4,500, whereas Garvey offered to pay the entire amount in cash. On March 6, Mrs. Edwards mailed a check for $10 to Clubb, but he did not cash it or return it. On March 7 Garvey assigned his interest in the property to Leo J. Naughton and Walter L. Green. On June 5 Naughton and Green filed a petition alleging

that prior to the institution of the suit they had no notice of the agreement alleged by Clubb, and praying for permission to intervene in the case. It is well settled that a court of equity will allow any person to intervene in a suit for the purpose of protecting a property interest, although no such right is specifically conferred by statute. *Conroy v. Southern Maryland Agricultural Ass'n,* 165 Md. 494, 169 A. 802; *Lickle v. Boone,* 187 Md. 579, 51 A. 2d 162. Hence, the petitioners were properly allowed to intervene as defendants.

Edwards and his wife and the two interveners pleaded the Statute of Frauds as a bar to the suit. The chancellor held (1) that Edwards and his wife had entered into a valid agreement for the sale of their property to Clubb, (2) that the agreement complied with the Statute of Frauds, and (3) that it was sufficiently definite to be specifically enforced. The chancellor accordingly passed a decree ordering Edwards and his wife to convey the property to Clubb upon payment by him of the sum of $5,500 in cash. The intervening defendants appealed from that decree.

We are of the opinion that the chancellor erred in decreeing specific performance, because the evidence supports the conclusion that the contract, even though it may be valid under the Statute of Frauds, was rescinded. Clubb made a deposit of only $10, and he was apparently unable to borrow the money from the bank to finance the deal as he had hoped, although it is true that some time later he found that he could raise the money after the property had greatly enhanced in value as a result of a government development in the vicinity. On March 3, 1945, Mrs. Edwards phoned him that she and her husband had decided not to sell to him, and on March 6 she sent him her check for $10. While it is conceded that Clubb did not cash the check, he made no reply. He continued to pay rent to Edwards until May 12, when he received notice to pay the rent to Naughton. He did not protest the rescission at any time from March 3 until May 12, a period of 70 days. Under the circumstances

of this case his retention of the check without any objection must be considered as acquiescence by him in the position of the vendors that the dubious agreement was canceled.

Furthermore, even if it could be accepted that the contract was not rescinded, it could not be enforced for the reason that it is too indefinite. The receipt provided that Clubb should pay $4,500 in cash and give a note for $1,000. It gave no further particulars about the note obligation. It mentioned neither how long the note was to run, nor what interest was to be paid thereon. We must follow the firmly established rule that a court of equity will not decree specific performance of any contract unless it is clear, unambiguous and certain in all its parts, and fair and mutual. *Gelston v. Sigmund,* 27 Md. 334, 343; *Anshe Sephard Congregation v. Weisblatt,* 170 Md. 390, 185 A. 107; *Trotter v. Lewis,* 185 Md. 528, 45 A. 2d 329; *Smith v. Biddle,* 188 Md. 315, 52 A. 2d 473.

We will, therefore, reverse the decree of the chancellor directing Edwards and wife to convey the property to complainant.

> *Decree reversed and bill of complaint dismissed, the costs above and below to be paid by James E. Clubb, appellee.*