CHAMBERS, ET AL. *v.* JORDAN, ET AL.

[No. 302, September Term, 1969.]

*Decided March 3, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and DIGGES, JJ.

*Joseph A. Mattingly*, with whom was *E. Austin Carlin* on the brief, for appellants.

*David E. Betts*, with whom were *Betts, Clogg & Murdock* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

In October, 1963, Bobby Gene Chambers and his wife, Nora Chambers (the Chambers) entered into a contract for the purchase of lot #36 in Block 5 of Ancient Oaks subdivision in Montgomery County from William C. Howarth, doing business as William C. Howarth Company (Howarth) and of a house to be built there by Howarth. The total contract price, as stated in the agreement, was $34,500.00, of which $5,000.00 was stated to have been paid at the time of signing.

At about the time that the house was completed, a dispute arose regarding the payment of $750.00 in certain settlement costs which Howarth claimed were payable by the Chambers. In October, 1964, the Chambers filed a bill for specific performance against Howarth [1] in the Circuit Court for Montgomery County. A week after the suit was brought, Howarth sold the house to James W. and Margaret H. Jordan (the Jordans) who were joined as defendants in 1968.[2]

---

1. As originally filed, the complaint named Howarth and his wife as defendants. Howarth died in 1967, and the suit continued against Mrs. Howarth.
2. Nearly five years elapsed, during which the bill was amended three times, from the filing of the first bill of complaint to the entry of the order appealed from.

The Jordans and Howarth demurred to the Chambers' bill as finally amended on the ground that the amended bill failed to set forth a cause of action. The Jordans assigned as an additional ground that the contract is vague and indefinite and not susceptible of specific performance. From an order sustaining the demurrers without leave to amend, the Chambers have appealed.

A photostatic copy of a signed original of the contract was filed with the Chambers' amended bill. It is a rather inexpertly typed document, which is set forth in full:

"This Contract of Sale, made this 2nd day of October, 1963, by and between William C. Howarth Company of the First Part, Seller and Bobby Gene Chambers and Nora Chambers, his wife, of the Second Part, Buyer,

WITNESSETH, that in consideration of the sum of $34,500.00,[3] of which the Seller acknowledges the receipt in part payment $5000.-00,[4] the Seller hereby sells to the Buyer, and Buyer does hereby purchase from the Seller, all that property situate in: Montgomery County, Maryland and described as:

Lot #36, Block 5,[5] Ancient Oaks,
Montgomery County, Maryland

improved by premises known as:

*Lot #36, Block 5,[5] Wye Oak Drive

upon the following terms: Seller is to obtain a $25,000.00 (Twenty-five thousand dollar) deed of trust. The remaining amount of purchase price will be paid at the time of closing.
Subject to:

AND upon payment of the full consideration

---

3. In their bill, the Chambers say that this figure was a mutual mistake, and should have been $31,000.00.

4. The Chambers allege that the amount of the deposit was $1,500.00, and that they made an additional payment of $673.30.

5. Which the Chambers say should have been Block 4.

as aforesaid, the Seller shall execute and deliver unto the Buyer a good and sufficient special warranty deed with covenants of seisin and further assurances,

PROVIDED, that upon examination of the title, it be found free of liens and defects other than those assumed by the Buyer.

Title examination and all costs of conveyancing to be paid for by the Buyer; Federal Documentary stamps, release of prior liens and legal fees for perfection of title, if required, to be paid for by the Seller.

Taxes, annual Washington Suburban Sanitary Commission front foot benefit charge, and interest on assumed mortgages if any, to be adjusted to date of settlement.

Settlement to be held at the offices of Judson R. Wood on or before ................................

The property shall be held at the risk of the Seller until possession is given or the deed of conveyance delivered after settlement.

This contract contains the final and entire agreement between the parties hereto, and shall be binding on them, their heirs, personal representatives and assigns.

The Seller recognizes .................................... as the procuring cause of this Contract, commission .................................... due upon the signing hereof, and if the same be not paid prior to settlement under this contract, the Seller authorizes the settlement agent to deduct the same at settlement.

The entire deposit shall be held by .................... ........................, in trust until settlement. If the deposit is forfeited by the non-performance of the buyer, one-half of the said deposit shall be paid to the Seller and the other half to the

Broker as compensation for his services, but will not exceed the commission agreed upon.
WITNESS our hands and seals:
Date: October 2, 1963

/s/ Bobby Gene Chambers      (SEAL)
October 2, 1963
/s/ Nora Chambers      (SEAL)

...........................

/s/ William C. Howarth      (SEAL)

*The improvements on the property will be built by the Seller according to the plans and specifications attached hereto." [6]

In two recent cases, *Paape v. Grimes*, 256 Md. 490, 260 A. 2d 644 (1970) and *Gilbert v. Banis*, 255 Md. 179, 257 A. 2d 206 (1969), we have had occasion to identify the circumstances under which specific enforcement will be decreed. In both cases, we cited with approval what had been said by the Court, speaking through Judge (later Chief Judge) Prescott in *Quillen v. Kelley*, 216 Md. 396, 407, 140 A. 2d 517 (1958):

"It needs little, if any, citation of authority to sustain the statement that if an agreement be so vague and indefinite that it is impossible to collect from it the full intention of the parties, it is void, *Strickler Eng. Corp. v. Seminar*, 210 Md. 93, 101, 122 A. 2d 563, *Robinson v. Gardiner*, 196 Md. 213, 217, 76 A. 2d 354, and the vendee is entitled to a refund of any payments made upon the purchase price. *Globe Home Impvt. Co. v. Brothers*, 204 Md. 73, 74, 102 A. 2d 748. But courts are reluctant to reject an agreement, regularly and fairly made, as unintelligible or insensible. The agreement will be sustained if the meaning of the parties

6. No plans and specifications were attached to a copy of the agreement filed with the bill.

can be ascertained, either from the express terms of the instrument or by fair implication. The law does not favor, but leans against the destruction of contracts because of uncertainty; therefore, the courts will, if possible, so construe the contract as to carry into effect the reasonable intention of the parties if that can be ascertained. *Middendorf, W. & Co. v. Milburn Co.,* 134 Md. 385, 387, 388, 107 A.7. Cf. *Trotter v. Lewis,* 185 Md. 528, 45 A. 2d 329; *Schloss v. Davis,* 213 Md. 119, 131 A. 2d 287." 255 Md. at 185-86.

In *Gilbert v. Banis, supra,* we endeavored to distinguish between contracts which cannot be specifically enforced because of patent ambiguities appearing on the face of the writing itself, and instances where specific enforcement has been accorded contracts containing latent ambiguities: *i.e.,* where the language employed is clear and intelligible, but some fact susceptible of proof by extrinsic evidence necessitates interpretation or a choice among two or more possible meanings.

The ambiguity or uncertainty in the contract before us was patent, appearing in the description of the "terms" of the sale and purchase:

"Seller is to obtain a $25,000.00 (Twenty-five thousand dollar) deed of trust. The remaining amount of purchase price will be paid at the time of closing."

The basic terms of a mortgage must be stated if there is to be a specifically enforceable contract, *Grooms v. Williams,* 227 Md. 165, 171, 175 A. 2d 575 (1961). These include the term of the mortgage and interest. *Fett v. Sligo Hills Dev'l Corp.,* 226 Md. 190, 195, 172 A. 2d 511 (1961); *Standard American Homes, Inc. v. Pasadena Bldg. Co.,* 218 Md. 619, 147 A. 2d 729 (1959); *Smith v. Biddle,* 188 Md. 315, 319, 52 A. 2d 473 (1947); *Naughton v. Clubb,* 188 Md. 374, 52 A. 2d 739 (1947). Compare,

however, *Triebert v. Burgess,* 11 Md. 452, 463 (1857) and *Caplan v. Buckner,* 123 Md. 590, 602, 91 A. 481 (1914) holding that a mortgage would mature at a reasonable time if no term was fixed. See also, *Paape v. Grimes, supra,* where we decided that if interest is provided for, but no rate is specified, the legal rate will be implied, and *Gilbert v. Banis,* which held that a maturity date could be implied from the payments called for. While the contract which the Chambers signed provided for the principal amount of the deed of trust, it specified neither term, interest rate nor when payments of interest or principal would be payable.

More often than not, uncertainty with respect to financing is a bar to specific performance when suit is brought by the seller against the buyer. Here, however, it was the seller who undertook the responsibility of arranging the financing. The Chambers say, somewhat cavalierly, we think, that they would be content with whatever financing Howarth might have arranged, including the financing which enabled the Jordans to purchase the house, without alleging that the Jordans' deed of trust had been obtained by Howarth or what the terms of this financing were, beyond the allegation that it provided $25,000.00 of the purchase money and is payable in monthly installments.

The Chambers argue that if they can waive the provision of the sale contract which required the house to be built to certain specifications, they can waive the uncertain provision as to financing. Perhaps they may. But in order to do so, they must make a tender in cash of the purchase price called for by their contract, *Darneille v. Geraci,* 237 Md. 51, 205 A. 2d 55 (1964).

In prayer 6 of their amended bill, the Chambers offered to pay the difference between the amount of the deed of trust called for in the contract and the purchase price less the $1,500.00 down payment and $673.30 in settlement costs alleged to have been advanced. They would then propose to take title subject to the deed of trust which the Jordans have placed on the property.

152

The deed of trust is not in the record before us, and in any event, there is no allegation that the Chambers are prepared to assume the obligation or that the lender will accept the Chambers as obligors in place of the Jordans; it may well contain a covenant forbidding alienation.

The Chambers fell far short of the rule stated for the Court by Judge Horney in *Darneille v. Geraci, supra*:

> "When, as here, it became clear that the sellers—by belatedly claiming that the contract of sale was too indefinite, uncertain and ambiguous to be specifically enforced—had no intention of going through with the sale in any event if that could be avoided, the purchaser was thereby required either to accept the title as it was and tender payment into court or take the risk of possibly losing his suit for specific performance. *Chapman v. Thomas*, 211 Md. 102, 126 A. 2d 579 (1956). In such case, the general rule is to the effect that where uncertainties exist in the terms of a contract of sale, specific performance should be granted when cash is tendered in full payment of the purchase price. And where credit is provided for, as was the case here, it is the privilege of the purchaser, in the absence of some indication to the contrary, to waive all uncertainties relating to the extension of credit by tendering the whole (or balance) of the purchase price. Ordinarily, tender not only waives all defects or uncertainties in the terms of credit, but also waives all other uncertain terms, when, as here, they were primarily for the benefit of the purchaser. In addition to *Haire v. Patterson, supra,* see *Blanton v. Williams,* 70 S.E.2d 461 (Ga. 1952); *Levine v. Lafayette Bldg. Corp.,* 142 Atl. 441 (N. J. Ch. 1928); *Binns v. Smith,* 115 Atl. 69 (N. J. Ch. 1921); *Morris v. Ballard,* 16 F.2d 175 (C.A. D.C. 1926). See also 5 *Williston on Contracts* (rev. ed.), § 1424." 237 Md. at 56-57.

Since we think the lower court properly sustained the demurrers without leave to amend because the sale contract was vague and indefinite as to terms of payment, a defect which the Chambers could not waive absent a tender of the balance of purchase price in cash, we need not reach the questions whether the agreement was also incapable of specific performance, as the chancellor found, because it was vague and indefinite in its provision regarding title defects, time of settlement and the improvements to be constructed, or whether the Chambers were barred by laches.

*Order affirmed, costs to be paid by appellants.*