# NUSBAUM *v.* SAFFELL

[No. 119, September Term, 1973.]

*Decided January 28, 1974.*

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Marker J. Lovell* for appellant.

*Jonathan A. Azrael,* with whom were *H. David Gann* and *Azrael & Gann* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

This appeal is from a decree granting specific performance of a contract for the sale of two parcels of land located in Finksburg, Maryland. Appellant, George A. Nusbaum (Nusbaum), is the owner of the two parcels, containing approximately 2.9 acres, situated in the 4th Election District of Carroll County. Appellee, James G. Saffell (Saffell), alleging that Nusbaum had refused to perform under the contract, brought suit against the latter in the Circuit Court for Carroll County, where he ultimately obtained the decree from which this appeal is taken. The facts in this case are relatively simple and free of dispute, a result due in great part to Nusbaum's decision to present no evidence.

Saffell, who was already the owner of property adjacent to that owned by Nusbaum, negotiated with him intermittently, but unsuccessfully during 1971 and early 1972. There seems to be no question but that the property had been on the market for some time prior to late March 1972, when Saffell received a telephone call from Nusbaum in which the latter acknowledged that his negotiations with another prospective purchaser had collapsed, and that he was therefore "ready to do business." Saffell promised to visit Nusbaum and eventually arrived at his home in Finksburg on the evening of April 20, 1972, in the company of a friend, Earl Younger (Younger).

After some negotiations had taken place, the parties signed a memorandum, written in longhand by Saffell and witnessed by Younger, which read:

"4-20-72

"Contract of Sale of property known as Geo. Nusbaum tract & former Percy Barnes property located between Old Balto. Pike & route 140. Bound on the north side by Ethel Williams property & south side by old Sam Seltzer property for $28,000.

"Terms $7000 pd. at time of signing of contract on June first & $7000 to be paid each 3 months until amt. of sale satisfied.

"Mr. Geo. Nusbaum to receive no interest for the unpaid balance & he be allowed to live rent free in his house until the money is paid in full.

"Deposit pd. 4-20-72 in the amount of $500.00 to bind the agreement.

Signed JAMES G. SAFFELL

GEORGE A. NUSBAUM

Witness EARL H. YOUNGER"

As Saffell departed that evening, Nusbaum handed him two deeds covering his property. From these instruments it is clear that Nusbaum had taken title in fee simple as the sole owner of the two parcels. In delivering the deeds, Nusbaum stated that they represented the property being sold. Simultaneously with the execution of the memorandum, Saffell handed a check in the amount of $500 to Nusbaum, who cashed it the following day.

Within a few days, Nusbaum informed Saffell that he wished "to have a more standard form of contract of sale and it should be taken care of through an attorney." Saffell acquiesced in this request, and offered to have the matter handled by his attorney, H. David Gann, Esq. (Gann). On May 4, Gann called Nusbaum to inform him that he had been instructed by Saffell "to prepare a more formal type of contract," and proceeded to review the terms of the handwritten agreement with him as he understood them. Nusbaum acknowledged that Gann's understanding of the terms was correct; and when Gann promised "to be as

correct as I can possibly be" in drafting the formal contract, Nusbaum replied, " 'Dr. Saffell knows what he's getting. You prepare the contract.' "

On the following day, May 5, Gann delivered the redrafted contract to Saffell who forwarded it to Nusbaum shortly thereafter. When June 1 arrived without any word from Nusbaum, Gann called the latter's attorney, L. Awalt Weller, Esq. (Weller). The latter acknowledged receipt of the new draft from Nusbaum, but stated that they had not yet reviewed it. He promised to call Gann after discussing the contract with his client. When no such call was received, Gann wrote to Weller on June 7 for his advice on "the status of this matter." Weller replied in a letter dated June 12 that Nusbaum had returned the $500 deposit to Saffell, since Nusbaum ". . . was very emphatic that he would not enter into a formal contract and in fact he would not enter into any contract at this time for the sale of his property." This position was rejected by Gann in two subsequent letters to Weller, in the second of which — dated June 29 — the $500 check was returned to Weller with an announcement that Saffell was preparing to sue for specific performance.

Initially, the case was heard by the chancellor (Weant, J.) on January 19, 1973. At that time, he reserved his ruling on Nusbaum's motion to dismiss which was interposed after Saffell rested his case. Over Nusbaum's objection, the chancellor subsequently granted Saffell leave to amend his bill of complaint and to take additional testimony. Further proceedings transpired on March 16, 1973. At that time, in addition to presenting additional testimony to bolster his proof that he had tendered performance, Saffell produced a certified check in the sum of $27,500. This was tendered to Nusbaum, who refused to accept it, and then was delivered to the Clerk of the Circuit Court. Saffell then closed his case, and Nusbaum rested without offering any evidence.

After holding the matter *sub curia,* the chancellor decreed specific performance, explaining his reasons for doing so in a carefully considered opinion. In reaching his decision, the chancellor concluded that the writing of April 20, 1972, contained "all the essential terms and material elements" of

a valid and enforceable contract; and that Saffell "was at all times ready, willing, and able to consummate the agreement of April 20, 1972." We think the chancellor decided the case correctly, and therefore affirm the decree.

Two questions are presented for our consideration:

1. Whether the written memorandum of April 20, 1972, is sufficiently definite and certain to permit specific performance.

2. Whether the chancellor abused his discretion in permitting Saffell to take additional testimony after he had already closed his case.

(1)

In urging reversal, Nusbaum primarily contends that the memorandum of April 20, 1972, lacked "all the essential terms and material elements justifying a decree for specific performance." For this contention, he relies upon *Forsyth v. Brillhart*, 216 Md. 437, 140 A. 2d 904 (1958), where, following the rule enunciated in 1 Restatement of Contracts, § 207 (1932), we said:

"... [T]hat a memorandum, in order to make enforceable a contract within the Statute of Frauds, may be any document or writing, formal or informal, signed by the party to be charged or by his agent actually or apparently authorized thereunto, which states with reasonable certainty, (1) each party to the contract either by his own name, or by such a description as will serve to identify him, or by the name or description of his agent, and (2) the land, goods or other subject-matter to which the contract relates, and (3) the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made." 216 Md. 440.

Although we there held that the memorandum sought to be enforced lacked " 'the terms and conditions of all the promises constituting the contract,' " 216 Md. 441, one may readily ascertain our reason for doing so from a mere glance

at the memorandum itself, viewed in light of the testimony there that the property was encumbered by a mortgage and at least one other lien; and that a number of other material conditions which had been agreed upon also were not mentioned. The agreement in *Forsyth* merely said:

"May 9, 1957.

" 'Received of Joseph H. Forsyth $50.00 as part payment on farm of 115 acres. Price to be $7,750.00. To be settled for on or before thirty days of this date.

Lloyd A. Brillhart.' "

Here, Nusbaum maintains that the memorandum is deficient in that it does ". . . not define with certainty the dates of the payments to be made after June 1, 1972, nor did it provide for payment of taxes, public charges, documentary stamps or transfer taxes, among other things nor did it provide for time of transfer of title or any deed whatsoever or for any warranties of the seller." Moreover, Nusbaum says, the "memorandum fails to disclose which of the parties was the buyer and which was the seller."

In *Quillen v. Kelley*, 216 Md. 396, 140 A. 2d 517 (1958), Judge Prescott, for the Court, delineated the circumstances under which specific performance will be decreed:

"It needs little, if any, citation of authority to sustain the statement that if an agreement be so vague and indefinite that it is impossible to collect from it the full intention of the parties, it is void, *Strickler Eng. Corp. v. Seminar*, 210 Md. 93, 101, 122 A. 2d 563, *Robinson v. Gardiner*, 196 Md. 213, 217, 76 A. 2d 354, and the vendee is entitled to a refund of any payments made upon the purchase price. *Globe Home Impvt. Co. v. Brothers*, 204 Md. 73, 74, 102 A. 2d 748. But courts are reluctant to reject an agreement, regularly and fairly made, as unintelligible or insensible. *The agreement will be sustained if the meaning of the parties can be ascertained, either from the express terms of the*

*instrument or by fair implication.* The law does not favor, but leans against the destruction of contracts because of uncertainty; therefore, the courts will, if possible, so construe the contract as to carry into effect the reasonable intention of the parties if that can be ascertained. *Middendorf, W & Co. v. Milburn Co.*, 134 Md. 385, 387, 388, 107 A. 7. *Cf. Trotter v. Lewis*, 185 Md. 528, 45 A. 2d 329; *Schloss v. Davis*, 213 Md. 119, 131 A. 2d 287." 216 Md. 407 (emphasis added).

We have consistently adhered to these principles where a question of indefiniteness has arisen in specific performance cases, *Chambers v. Jordan*, 257 Md. 144, 262 A. 2d 505 (1970); *Paape v. Grimes*, 256 Md. 490, 260 A. 2d 644 (1970); *Gilbert v. Banis*, 255 Md. 179, 257 A. 2d 206 (1969).

We think it "can be ascertained . . . by fair implication" that the parties intended settlement under the contract to be held on June 1, 1972, when Saffell was to pay the balance of the $7,000 purchase money; that they intended the remaining $21,000 to be paid in installments of $7,000 each on September 1, December 1, and March 1, 1973; that until the last payment was made, Nusbaum was "to live rent free in his house." That no other contract was intended, despite the words, "at time of signing of contract on June first," is clear from the uncontradicted testimony that the "more formal contract" was not mentioned until a few days after the memorandum was signed. No purpose would have been served in providing for rent-free occupancy by Nusbaum after June 1, if Saffell was not intended to acquire title on that date.

Nor is there any merit in the argument that the memorandum failed to provide for payment of documentary stamps and transfer taxes. Maryland Code (1957, 1973 Repl. Vol.) Art. 21, § 14-104 provides:

"In every agreement, written or oral, for the sale or other disposition of property, it shall be presumed (in the absence of a provision to the contrary in the agreement or in the law) that the

> parties to such agreement intended that the cost of any federal or Maryland revenue stamps or any Maryland or local transfer tax should be equally shared between the grantor and grantee. . . ."

Thus, the failure of the agreement to provide for the payment of revenue stamps and transfer taxes was not a material omission, and did not bar specific performance.

The contention that the "memorandum fails to disclose which of the parties was the buyer and which was the seller" is patently absurd. The memorandum refers to the "Geo. Nusbaum tract" and specifies that he is "to live rent free in *his* house . . . ." (emphasis added). In addition, lest Nusbaum remain uncertain of his own posture, the two deeds handed by him to Saffell list him as the grantee, and thus at the very least identify him as the apparent owner.

Clearly, the memorandum meets the requirements of the Statute of Frauds in stating with reasonable certainty the parties to the contract; the land to which the contract relates; the terms and conditions of all the promises constituting the contract; and by whom and to whom the promises are made, *Forsyth v. Brillhart, supra.* Likewise, it also meets the test, enunciated in our prior decisions, for granting specific performance, since its meaning and the parties' "reasonable intention . . . can be ascertained" from the "express terms of the instrument or by fair implication." *Chambers v. Jordan; Paape v. Grimes; Gilbert v. Banis; Quillen v. Kelley,* all *supra.*

Furthermore, Saffell would be entitled to specific performance even if it had been determined that the memorandum lacked the requisite certainty. In *Darneille v. Geraci,* 237 Md. 51, 205 A. 2d 55 (1964), under parallel circumstances we said:

> ". . . In such case, the general rule is to the effect that where uncertainties exist in the terms of a contract of sale, specific performance should be granted when cash is tendered in full payment of the purchase price. And where credit is provided for, as was the case here, it is the privilege of the

purchaser, in the absence of some indication to the contrary, to waive all uncertainties relating to the extension of credit by tendering the whole (or balance) of the purchase price. Ordinarily, tender not only waives all defects or uncertainties in the terms of credit, but also waives all other uncertain terms, when, as here, they were primarily for the benefit of the purchaser. (citations omitted)." 237 Md. 57.

Here, as we noted earlier, Saffell tendered payment of the entire purchase price to Nusbaum, who rejected it, and then paid it to the Clerk of the Circuit Court. By doing so, Saffell waived any uncertain terms in the memorandum, all of which would have been primarily for his benefit. The result was to undercut Nusbaum's contention that the memorandum was not susceptible of specific performance.

In addition, *Darneille, supra*, also disposes of any possible contention that tender came too late:

". . . When, however, a purchaser is at all times able, ready and willing to perform, a tender before trial is not necessary where the seller has expressed his intention not to perform. See *Christian v. Johnson Construction Co.*, 161 Md. 87, 155 Atl. 181 (1931), where it was held that a tender is not necessary when it would have been futile. See also *Lissau v. Smith*, 215 Md. 538, 138 A. 2d 381 (1958); *Maughlin v. Perry*, 35 Md. 352 (1872), Pomeroy, *Specific Performance of Contracts* (3rd ed.), § 361. As to a tender being unnecessary if a seller repudiates a contract before suit or where it appears he would refuse a tender, see 49 Am. Jur., *op. cit.*, § 144." *Id.*

Similarly, the chancellor here found that Saffell was "at all times ready, willing and able to consummate the agreement of April 20, 1972." The evidence was likewise uncontradicted that an earlier tender would have been futile, since Nusbaum had expressed, as early as June 12, 1972, his intention not to perform. Prior to that date, Saffell had been awaiting Nusbaum's word on the proposed formal

contract. Although made at the second court hearing, the tender was nevertheless sufficient to establish Saffell's prayer for specific performance.

(2)

The chancellor's decision to allow the reopening of Saffell's case and the introduction of additional testimony is attacked by Nusbaum on the grounds that Saffell failed to demonstrate why the testimony could not have been produced at the first hearing; and that the effect of the court order was to permit Saffell to testify on two occasions.

The short answer to the latter contention is that at the second hearing, the chancellor carefully restricted the testimony to the issue of "tender of performance"; thus no repetitious testimony was admitted at that time. The procedure invoked here was virtually identical to that followed in *Bradford v. Eutaw Savings Bank*, 186 Md. 127, 46 A. 2d 284 (1946), where we held that the chancellor has the power—indeed the plain duty—to allow defects in proof to be supplied at any time, when, in his discretion, the ends of justice will be served; and that his action in so doing will only be reversed if it is arbitrary and the rights of some of the parties are improperly affected. *Cf. Beane v. McMullen,* 265 Md. 585, 619, 291 A. 2d 37 (1972).

We fail to see how Nusbaum was prejudiced by the chancellor's decision to allow the additional testimony. The issue of "tender of performance" was raised by Nusbaum for the first time when he moved to dismiss the bill of complaint following the conclusion of Saffell's case at the first hearing; his answer was silent on this issue. After Saffell rested his case at the second hearing, Nusbaum declined — as he had at the first hearing — to offer any evidence, although he was afforded the opportunity to do so.

We perceive no arbitrary conduct here. On the contrary, the chancellor flatly announced at the conclusion of the first hearing that he was rejecting Nusbaum's contention of indefiniteness; but he did express reservations concerning whether "tender" had been established, even though the issue was being raised for the first time at that point. In the

exercise of his discretion, he thus recognized — correctly, we think — that Saffell should have the opportunity to present the necessary proof.

*Decree affirmed; appellant to pay costs.*