(Decided June 1st, 1864.)

---

HENRY OELRICHS AND GUSTAV W. LURMAN, vs. DANIEL ARTZ AND SAMUEL ARTZ.

EVIDENCE: CONTRACT: PARTIES.—Upon a contract for the sale of flour deliverable at a future day, a valid tender of the flour was made on the day contracted for, and acceptance refused on the ground that the contract was at an end; and this tender was proved by a witness at the trial of an action brought upon the contract for the non-acceptance of the flour. Another witness testified to a tender made by him on the proper day, and being then asked by the plaintiffs' attorney, if he knew the flour tendered to be the plaintiffs' flour, said he did not know any thing of it himself, but he was informed by one of the firm in whose warehouse the flour then was, that it was the plaintiffs' flour, and was told by him to tender it as such. The defendants objected to the admissibility of this evidence of the statements made to said witness, but the Court overruled the objection and permitted the evidence to go to the jury. On appeal, HELD:

1st. That although the objection to the evidence would have been well taken, if this evidence had stood alone, yet, as the previous evidence showed a tender and refusal which was equivalent to a waiver of any further tender, the evidence objected to was immaterial, could do no harm, and its admission was no ground for a reversal of the judgment.

2nd. Where the original promisees in a contract, assign part of their interest, after the contract is made, it would be a mis-joinder to make the assignee of such interest a plaintiff, jointly with the original promisees in an action on the contract.

APPEAL from the Superior Court of Baltimore City :

This action was brought in the Superior Court of Balti-
more City, by the appellees, co-partners, under the firm of
D. Artz & Son, against the appellants, co-partners, trad-
ing under the firm of Oelrichs & Lurman, for a violation
of the following contract:

"BALTO., *Nov. 24th,* 1855. For and in consideration of the
sum of one dollar, the receipt whereof is hereby acknowl-
edged, we have this day purchased and agreed to receive
from John W. Bell, two thousand barrels How. St. or
Ohio superfine flour, at his option, in all January 1856,
deliverable in lots of five hundred barrels, each lot subject
to three days' notice, and payable on the days of delivery,
at the rate of nine dollars and twenty-five cents per barrel.

"2000 bbls. all January.—9¼.

(Signed:)—"OELRICHS & LURMAN."

The plaintiffs to show that the above contract was made
by Bell as their agent, offered evidence similar in its char-
acter to that stated in the preceding case of *Oelrichs &
Lurman vs. Ford,* and the admission of this evidence forms
the ground of the appellants' *1st Exception.*

*2nd Exception.* The plaintiffs then proved by Turnbull,
that Bell, on the 19th of December 1855, disappeared from
Baltimore, and has never returned; that the plaintiffs were
general grocers, residing in Hagerstown; that Bell was a
flour merchant in Baltimore, and when he disappeared, left
his affairs in an utterly insolvent condition; and gave in
evidence their letter of January 22nd, 1856, to the defend-
ants, informing them that they would deliver the flour in
pursuance of the contract. To this letter, Mr. Frick, for Oel-
richs & Lurman, replies to Brown & Brune, as counsel of
plaintiffs, that Oelrichs & Lurman only knew Mr. Bell in the
contract, and that they informed Mr. Artz on the afternoon
of Monday, December 24th, 1855, that they had demanded of
Mr. Bell a margin to be put up to secure the performance
of this contract, and that he had failed to comply with the
demand, and that he, (Mr. Frick,) informed Brown &

Brune on the 29th of December 1855, that by reason of the failure to put up the margin, Messrs. Oelrichs & Lurman, according to mercantile usage, considered the contract as rescinded, and refused to take the flour.

The plaintiffs proved by Stewart Brown, that at the request of Brown & Brune, attorneys for the plaintiffs, on the 26th, 28th, 29th and 30th of January 1856, he in company with Mr. Fowler, waited on Mr. Frick, to whom they were referred by the defendants as their attorney in the matter, and tendered on behalf of the plaintiffs, on each of said days, 500 barrels of Howard street superfine flour, in pursuance of the contract offered in evidence, which he exhibited to Mr. Frick; and that he likewise stated on each of those occasions, that Messrs. Fowler & Zeigler had the flour in their warehouse, ready for delivery; that Mr. Fowler, at witness' request, confirmed these statements, but that Mr. Frick, on behalf of defendants, declined the flour.

The plaintiffs also proved the market price of Howard street and Ohio superfine flour to be $8.50 per barrel in Baltimore, on the days mentioned in the letter of D. Artz & Son, of January 22nd, 1856. They then proved by John H. Fowler, that he was clerk in the house of Fowler & Zeigler, flour merchants in Baltimore City, and was instructed by said firm to tender, and did tender on behalf of the plaintiffs, to Mr. Frick, to whom he had been referred by the defendants as their attorney, 500 barrels of Howard street superfine, on each of the days named in their letter, and that at the time of each of said tenders, Fowler & Zeigler had from 2000 to 3000 barrels of said flour in their warehouse; and that being asked by the plaintiffs' attorney if he knew the flour tendered to be the plaintiffs' flour, he said he did not known anything of it himself, but he was informed by Mr. Fowler, of the firm of Fowler & Zeigler, that it was the plaintiffs' flour, and was told by him to tender it as such. To the admissibility of this evidence of the statements of Mr. Fowler, of the firm of Fowler & Zeigler, to the witness, the defendants objected; but

the Court overruled the objection, and permitted the same to be given to the jury, to which ruling the defendants excepted.

The plaintiffs then proved by Joseph Newcomer, that he knew the firm of D. Artz & Son, that they were in 1855 and 1856, general grocers in Hagerstown, Maryland, in good credit and standing; that he knew of the contract in controversy.

On cross-examination he stated, that the way he came to know about the contract was, that having heard about it, and believing it to be a good contract, he went to Artz and asked him to let him in with him in it; that he frequently made such contracts with Artz, on their joint account, and that Artz agreed to let him have an interest with him in the contract given in evidence. This was after the contract had been reported by Bell to Artz, and before Bell's absconding, and the contract between witness and Artz was verbal.

*3rd Exception.* The proof offered by the defendants in the third bill of exceptions, and rejected by the Court, is similar to that offered by the defendants and rejected by the Court, in the second bill of exceptions in the preceding case of *Oelrichs & Lurman vs. Ford,* except that the solvency of the plaintiffs in this case is not questioned; and it is not alleged that they refused to put up a margin.

*4th Exception.* The proof offered by the defendants in the fourth bill of exceptions, and rejected by the Court, is similar to that offered by the defendants, and rejected by the Court, in the third bill of exceptions in said case.

*5th Exception.* The instruction of the Court given in the fifth bill of exceptions in this case, is similar to that given in the fourth bill of exceptions in said case.

*6th Exception.* The defendants then prayed the Court to instruct the jury, that if they should find from the evidence, that the plaintiffs, at the time of the institution of this suit, were interested with Joseph Newcomer in the contract given in evidence, the said Newcomer is a neces-

sary party to the same, and, therefore, the plaintiffs are not entitled to recover, which instruction the Court refused to give, and the defendants excepted.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH and COCHRAN, J.

[Upon the questions arising upon the 1st, 3rd and 4th exceptions, the counsel on both sides relied upon their arguments and authorities in the preceding case of *Oelrichs & Lurman, vs. Ford.*]

*Wm. F. Frick,* for the appellants :

The second exception refers to the admission by the Court, of the statement by Mr. Fowler's clerk, that he tendered the defendants the flour required by the contract; that he did not know whether it was the plaintiffs' flour, *but was informed by Mr. Fowler that it was.* This was clearly hearsay and inadmissible. If the fact was material it should have been proved by Fowler himslf. And it certainly was material to show that the flour tendered, either belonged to the plaintiff or was subject to his order. Fowler was an entire stranger to the contract and a volunteer, and had no right to offer to perform it on the plaintiff's part, unless by the authority of the plaintiff himself. If he had such authority, he was competent to prove that fact, and should have been produced.

The sixth exception is upon the refusal of the Court to grant the defendant's prayer for an instruction, based upon the fact disclosed by the testimony of the plaintiffs, that they were jointly interested with one Newcomer in a recovery upon the written contract sued on. At the time *the contract was to be performed,* Newcomer and the plaintiffs, as between themselves, were jointly liable to perform it, and jointly entitled to claim damages for its non-performance by the defendants. But the defendants had not contracted with either of them, but with Bell only. If

either, therefore, had a right to sue, it was not by reason of any privity of contract with the defendants, but only by reason of their being the *real parties interested* in performing and requiring performance of the contract. This is the true ground upon which parol evidence is admissible for the purpose of adding parties to the written contract. This is not the case of the assignment of an interest in a "*chose in action*," but in an executory contract. And the assignment is not by a party to the written contract itself. Who would be proper parties under such circumstances, is, therefore, not to the point. If the action can be maintained in the name of any other parties than Bell, and without joining him, it must be on the ground that Bell never had any beneficial interest in the contract, and that the parties suing were the real and only parties interested at the time the contract was to be performed by the defendants, and when the cause of action arose.

*Geo. Wm. Brown*, for the appellees:

In reference to the question raised by the second bill of exceptions, the instructions of Mr. Fowler, of the firm of Fowler & Zeigler, to their clerk, John H. Fowler, were properly admitted in evidence as part of the tender. The witness was told to tender certain flour; that it was the plaintiffs' flour, and he was to tender it as such. It was certainly the right of Fowler & Zeigler, in making the tender, to state, through their clerk, as part of the tender, that the flour was the plaintiffs. The fact that the flour was in the warehouse, was proved by the witness. Whether the flour actually belonged to the plaintiffs or not, was of no importance, provided it was at their disposal, and the testimony showed that Fowler & Zeigler tendered the flour as belonging to the plaintiffs, and were ready to deliver it as such. Their statement was properly admitted as showing that they made no claim to the flour, but held it as the plaintiffs' property, and at their disposal. If they had made the tender in writing, this is the first thing pro-

67      v. 21

bably that they would have said; and in sending a verbal tender, they had an equal right to make the statement.

But, in fact, no tender was necessary, after the positive refusal of the defendants to receive the flour, which was a waiver of tender. *Balto. & O. R. R. Co.*, vs. *Resley*, 7 *Md. Rep.*, 297. *Parsons on Con.*, 161, 163. *Barr* vs. *Meyers*, 3 *Watts & Serg.*, 295. 2 *Greenleaf's Ev.*, see. 609. *Edwards* vs. *Fire Ins. Co.*, 3 *Gill*, 176. *Polglass* vs. *Oliver*, 2 *Crompton & Jerv.*, 15. *Hochster* vs. *De Latour*, 20 *Eng. Law & Eq. Rep.*, 157. *Stanton* vs. *Small*, 3 *Sandf. Sup. Ct. Rep.*, 230.

The plaintiffs will contend, in reference to the question raised by the sixth bill of exceptions, that Joseph Newcomer would not be a proper party plaintiff to this suit. 1 *Chitty on Pl.*, 5 and 9.

BARTOL, J., delivered the opinion of this Court:

This case was argued in connection with the case of *Oelrichs & Lurman* vs. *Ford*, and involves some of the same questions decided in the other case.

At the trial six bills of exceptions were taken by the appellants, who were defendants below. Of these, the first, third, fourth and fifth, present the same points as the first, second, third and fourth exceptions in *Ford's case*, and for the reasons stated in the opinion therein filed, the rulings of the Superior Court on these exceptions will be affirmed.

The second exception. The tender of 500 barrels of flour in pursuance of the contract in this case, was made to the defendants, on behalf of the plaintiffs, by the witness John H. Fowler, the clerk of Fowler & Zeigler, in whose warehouse the flour then was. In answer to the question of the plaintiffs, if he knew the flour tendered to be the plaintiffs' flour, said, "he did not know any thing of it himself, but was informed by Mr. Fowler, of the firm of Fowler & Zeigler, that it was the plaintiffs' flour, and was told to tender it as such," and to the admission of this statement

by the witness, which was objected to by the defendants, this exception was taken.

The objection made to this testimony by the appellants in the argument, was that the declarations of Mr. Fowler were mere hearsay, and, if the fact was material, it ought to have been proved by Mr. Fowler himself. And further, that it was material to prove that the flour tendered belonged to the plaintiffs, or was under their control and subject to their order. Fowler was a stranger to the contract, and had no right to offer to perform it on the plaintiffs' part, unless by their authority.

These objections are well taken, and would be fatal if this evidence stood alone. But it appears from the same bill of exceptions, that on the 26th, 28th, 29th and 30th of January 1856, a tender was made of the flour on behalf of the plaintiffs by their attorneys, to Mr. Frick, the attorney of the defendants, to whom they had been referred by the defendants. That the flour tendered was stated to be in the warehouse of Fowler & Zeigler. And that Mr. Frick on each occasion declined and refused to accept the flour on behalf of the defendants, on the ground that the contract was at an end. This was a waiver of any further tender, and the testimony of John H. Fowler, was immaterial, could do no injury to the defendants, and its admission, a majority of the Court think, is no ground for a reversal of the judgment.

The sixth exception was taken to the refusal by the Court to grant an instruction to the jury, asked for by the defendants, declaring Joseph Newcomer to be a necessary party plaintiff. This prayer was based upon the testimony of Newcomer, to the effect that the plaintiffs had agreed to let him have an interest in the contract. This agreement was made after the contract had been made by Bell with the defendants, and reported to the plaintiffs by Bell.

The right of the plaintiffs to sue, grows out of the fact that the contract was made, on their behalf, by Bell as their agent. The action is brought upon the contract of

the 24th of November 1855. Newcomer was no party to that contract, and had no interest in it at the time it was made. Whatever interest he afterwards acquired, under his agreement with the plaintiffs, was as assignee; and it would be a mis-joinder to make him a plaintiff jointly with the original promisees in an action on the contract.

BOWIE, C. J., dissented, and delivered the following opinion:

The exceptions peculiar to this case, are the second and sixth.

John H. Fowler, a witness sworn on the part of the plaintiffs, and clerk of Fowler & Zeigler, having proved that, by the instruction of his employees, he had tendered on behalf of the plaintiffs to the defendants' attorney, to whom he had been referred by them, 500 barrels of flour, and that at the time of said tender Fowler & Zeigler had from 2000 to 3000 barrels of said flour in their warehouse, and the same was refused, was asked by the plaintiffs if he knew the flour tendered to be the plaintiffs' flour, to which he replied he did not know any thing about it himself, but he was informed by Mr. Fowler, of the firm of Fowler & Zeigler, that it was the plaintiffs' flour, and was told by him to tender it as such; to the admissibility of which evidence of the statements of Mr. Fowler, of the firm of Fowler & Zeigler, the defendants objected, and the Court overruled their objection, and permitted the same to go to the jury, which, constitutes the second exception. The appellees argue that whether the flour actually belonged to the plaintiffs or not was of no importance, provided it was at their disposal, that this evidence was admissible, as a part of the verbal instructions given by Fowler & Zeigler to their clerk, when directed to make the tender. "Their statement was properly admitted as showing that they made no claim to the flour, but held it as the plaintiffs' property; if they had made the tender in writing, this is the first thing probably that they would have said, and in

sending a verbal tender, they had an equal right to make the statement.''

This action sounding in damages, it was most material that the plaintiff should show, he was in good faith, prepared to comply with the contract at the time of the tender. If he had in fact no flour in the city to deliver, but had to go into the market and purchase, or pay a commission to another house to tender flour for him, the evidence of those facts was of the utmost importance in weighing the amount of damages to which he was entitled.

Although it was competent for Messrs. Fowler & Zeigler to instruct their clerk to make a tender, in a particular name and right, yet, when the question was not whether he, the clerk, received such instructions, but whether the fact implied in his instructions was true, and the clerk declared his ignorance of their real nature, the admission of the declaration or statement of his principal, as evidence of the fact, was certainly substituting secondary for primary proof, without any of the legal reasons for such admission.

The 6th exception was taken to the refusal of the Court to grant the defendants' prayer, that if the jury find from the evidence, that the plaintiffs, at the time of the institution of the suit were interested with Joseph Newcomer in the contract given in evidence, the said Newcomer is a necessary party to the same, and therefore the plaintiffs are not entitled to recover. The evidence on which this prayer was based, was not, in our judgment, sufficient to sustain it. Newcomer's testimony, which alone disclosed his interest in the contract, did not show any such legal interest as would entitle him to a right of action, either separately or jointly. There was no consideration for the promise of Artz to let him have an interest in the contract, and no agreement to assign any part of the contract, which could be enforced.

*Judgment affirmed.*

(Decided June 1st, 1864.)