SCHLOSS *v.* DAVIS

[No. 160, October Term, 1956.]

120

*Decided April 15, 1957.*

The cause was argued before BRUNE, C. J., COLLINS, HEN-DERSON, HAMMOND and PRESCOTT, JJ.

M. *Peter Moser* and *Lawrence I. Weisman,* with whom were *Nyburg, Goldman & Walter* on the brief, for appellant.

*A. Frederick Taylor,* with whom were *Smalkin, Hessian, Martin & Taylor* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment for the plaintiff in the amount of $6,804.56, entered on July 23, 1956, in an action on a verbal contract. The original action was in two counts, one alleging a contract between Davis and Schloss, and one alleging a contract between Industrial Engineering Co., Inc., a corporation of which Davis was the president, and Schloss.

On the first trial, a jury rendered a verdict for Davis on the first count in the amount claimed, and for Schloss on the second. However, the court set aside the verdict for Davis and granted a new trial. Industrial did not appeal from the judgment against it for costs. On the second trial, the jury again rendered judgment for Davis on the first count, based on the amount claimed plus interest.

Davis owned 50% of the stock of Industrial, the other 50% being owned by Conley, the vice president. Prior to the formation of the corporation, Davis had been employed by others as a carpenter and foreman in building operations, and had come to know Schloss, who was the active partner in Baltimore Lumber Company. One of the questions raised on this appeal is whether the contract was with Davis, individually. The appellant contends that it was either with the corporation, or with Davis and Conley, as partners, and in the latter alternative, Conley is a necessary party.

Davis testified that early in 1952 Schloss told him of his plan to build a circular dwelling house for his personal use, showed him tentative architectural drawings, and said "You got to build it for me." Davis estimated it would cost $135,000. Later, Schloss told him he had sold his present house, or was about to sell it, and wanted to get started on the new one immediately. Davis suggested that no terms had been agreed on, and he ought to charge 10% of the estimated cost. Schloss said that was too much, and offered to pay him $550 or $600 a month. Schloss said he simply wanted Davis to supervise the work. "I am paying all the bills, and I am getting the subcontractors, and I am furnishing all the materials. All I want you to do is get me good men on the job, get me a good foreman. Get me good carpenters, good men, and keep the job going, and keep it co-ordinated." Davis said: "I don't know whether you know I am employed by the Industrial Engineering Company, but I have to talk it over with my associate, and if he says okay on it, it will be all right with me * * * ." Schloss said: "I don't want any of my customers to think that your company is doing this work because it might make them mad and cause hard-feelings, so I don't want you to put any kind of sign on

the job." Davis talked it over with Conley, and as Industrial was light on work at the time, Conley felt he could handle the jobs on hand. Conley said: "If you want to work for $550 a month, it's okay. I have nothing to do with it. I have enough to do with taking care of our part of the company's business." Davis told Schloss the next day he would accept the job.

Schloss testified that he dealt with Davis as a representative of Industrial Engineering Company, which he thought was a partnership between Davis and Conley. He said: " * * * they were to only do the carpentry and supervisory work, and the supervisory work would be for the foreman carpenter to tie in the subcontractors' work." Schloss was to secure and pay all subcontractors, and meet the payroll of Industrial on the job. He testified his offer was to pay Industrial 5% of the actual labor and carpentry work that Davis and Conley agreed to do. He testified he received a letter on August 17, 1953, after the house was completed, on the letterhead of Industrial, signed by Davis as president, with an invoice in the amount of $6,050.00, for services "11 months @ $550.00 month". He returned the invoice the following day in a letter, to which he signed the name of Baltimore Lumber Company; stating that "I owe you 5% on $24,622.97", and that "this bill * * * [is] not what we agreed upon". In cross-examination, it was brought out that in a sworn deposition given on May 12, 1954, in answer to the question "with whom were you making the agreement, Davis or the Industrial Engineering Company?" he replied: "I made the agreement, as I recall, with Davis." There was also some evidence that in connection with a mortgage loan he requested and received a waiver of mechanics' lien signed by Davis individually, although the waiver was not produced.

Conley testified he had discussed the Schloss house with Davis "and the arrangements he had made with Mr. Schloss". Davis ran the job, and Conley gave no orders. When asked if he would share in "the profits on Mr. Schloss' house * * * if they pay you all something", he replied: "Well, yes."

We find no merit in the appellant's contention as to parties. It would seem that any claim by the corporation is barred

by *res judicata* or the law of the case. There is no evidence of a partnership between Davis and Conley. If there was an understanding between Davis and Conley as to a share in the recovery, that would not necessarily require that Conley be made a party, if indeed he would be a proper party. Cf. *Oelrichs v. Artz,* 21 Md. 524. See also Rule 203 b (4) of the new Maryland Rules. Certainly Davis performed the services individually and with Conley's consent, and it is difficult to see how it would concern the defendant if he proposed to share the fruits of his labor with another. But the short answer is that there was legally sufficient evidence upon which, if believed, the jury could find that the contract was with Davis, individually, and that Conley had no legally enforceable interest in the contract, if he had any interest at all.

The appellant contends that the contract was too vague and uncertain to permit recovery, in that no definite amount per month was specified. Davis testified that he billed Schloss for $550 per month, rather than $600, because "he was doing me favors too at different times * * * he just gave me leeway." It is true that a contract may be so vague and uncertain as to price or amount as to be unenforceable. Thus, in *Robinson v. Gardiner,* 196 Md. 213, we held that an alleged agreement to insure in an amount that would keep the plaintiffs free of all liability did not establish a contractual liability. But in *Trotter v. Lewis,* 185 Md. 528, we enforced an option to buy property for a price "not to exceed $2,500", upon tender of the maximum price. To the same effect, see *Hagan v. Dundore,* 185 Md. 86, 96, and cases cited. See also *Mutual Paper Co. v. Hoague-Sprague Corporation,* 8 N. E. 2d 802 (Mass.) and *Burlington Grocery Co. v. Lines,* 120 A. 169 (Vt.). Cf. *Foard v. Snider,* 205 Md. 435, 445. In *Kramer v. Ewing,* 10 Okla. 357, it was held that an offer to pay $50 or $60 for services was sufficiently definite to support a recovery of the lesser amount, since it was in effect an offer in the alternative, and an agreement to pay the lesser amount in any event. See also *Sibley v. Stetson & Post Lumber Co.,* 188 P. 389 (Wash.) and *Specker v. Sun Ray Drug Co.,* 60 A. 2d 400 (Pa. Super.). The case of *United Press v. New*

*York· Press Co.,* 58 N. E. 527 (N. Y.), relied on by the appellant, is distinguishable on the ground that the payment was for news reports that would necessarily vary from week to week, and the maximum figure specified was to fix an outside limit to recovery, not to establish in any way the value of the services rendered. See also the criticism of this case in *Corbin, Contracts,* § 47. In *Mosteller v. Mashburn,* 12 S. E. 2d 142 (Ga. App.), an agreement to pay between $4,000 and $5,000 for services in rehabilitating a farm, was held too vague, largely because the services were likewise indefinite. It may be noted that Georgia has taken an unusually strict view as to definiteness, as illustrated in *Williams v. Gottlieb,* 83 S. E. 2d 245 (Ga. App.). In the instant case we think the agreement as to price was not too vague to support recovery at the minimum figure. Nor do we think the services to be performed were too vague. We construe the offer to pay for the supervision in certain, or alternative, amounts per month, to cover the period of construction, which lasted for eleven months. It is true that there was evidence that the building operation did not proceed at a uniform rate, but was slowed down at one time because of bad weather and because of a fire at the plant of the Lumber Company at another time. But the agreement was to pay a fixed rate per month, and not on the basis of the time spent on the job.

The appellant further contends that the contract was void for illegality. One contention is that the plaintiff violated the Building Regulations, in that he did not obtain a permit before the construction began, as required by the local Baltimore County Code (1948), Title 23, Section 283. This section provides that "Any owner, agent, builder or contractor who shall erect, construct * * * a building or structure of any kind, * * * without having obtained a permit * * * shall be guilty of a misdemeanor * * *." It is a prerequisite that "plans and specifications showing the nature and character of the work to be done" be filed with the Buildings Engineer unless "such filing is waived for cause". Davis testified that final drawings had not been prepared when the work began, only working drawings for the foundation and the frame of the building. The county inspector told him a permit had

not been issued. "He didn't stop us, he let us go ahead and told us to get the permit and plans that were needed." Davis then got the permit in Schloss' name.

Davis was not a general contractor, but only a supervisor. If he was an agent of Schloss, it was for a limited purpose, and there was evidence of a waiver on the part of the Buildings Engineer. There is no suggestion that any of the work did not meet all requirements, so far as public health or safety is concerned, or that the plans, when submitted, were not approved by the Buildings Engineer in all respects, before any of the interior work on the building. was begun. The contract for supervision was not illegal *per se*. At most, it was conditioned upon the obtaining of a permit by Schloss, based on the approval of the architectural drawings which Schloss undertook to supply.

It is the general rule that recovery will be denied if a contract is illegal in purpose or made by a person lacking the legal qualifications to contract. *F. S. Bowen Elec. Co. v. Foley,* 72 S. E. 2d 388 (Va.). Cf. *Goldsmith v. Mfgrs' Liability I. Co.,* 132 Md. 283. See also Note 118 *A. L. R.* 676. But there is a recognized exception in cases where a denial of recovery would impose a penalty out of all proportion to the public good, particularly where the violation is not of a serious nature and merely incidental to the performance of the contract. See *Williston, Contracts* (Rev. ed.), §§ 1631, 1765; *Restatement, Contracts,* § 600; *John E. Rosasco Creameries v. Cohen,* 11 N. E. 2d 908 (N. Y.); *Ogilvy v. Peck,* 93 P. 2d 289 (Wash.); *Keith Furnace Co. v. Mac Vicar,* 280 N. W. 496 (Iowa); *Fox v. Rogers,* 50 N. E. 1041 (Mass.) (per Holmes, J.). This last case was explained, but not overruled on the facts, in *Tocci v. Lembo,* 92 N. E. 2d 254 (Mass.). We think the violation here falls within the exception. In so holding, we assume, without deciding, that the point can be raised in this Court, although not raised or decided in the court below, prior to the motion for judgment N.O.V. The contention that Davis had no general contractor's license, as required by Code (1951), Art. 56, Sec. 168, is without merit. It was noted in *Maguire v. State,* 192 Md. 615, that this particular license is for revenue and not

for regulation. Moreover, it is not clear that Davis would require such a license for a contract to supervise for an owner who was the general contractor.

Finally, the appellant contends that the verdict was influenced by a statement by the appellee while on the stand, that the defendant was "a pretty wealthy man", and other references to a "$135,000 house". In the context, we think these references were not prejudicial, and in any event, there was no objection taken, and the point is not before us.

*Judgment affirmed, with costs.*