Georgia E. PIERCE

v.

SECRETARY OF the UNITED STATES DEPARTMENT OF HEALTH, EDUCATION AND WELFARE.

Supreme Judicial Court of Maine.

June 3, 1969.

---

Thomas L. Brand, Portland, for plaintiff.

Lloyd P. LaFountain, U. S. Atty., Edward G. Hudon, Asst. U. S. Atty., Portland, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE and WEATHERBEE, JJ.

WEBBER, Justice.

Pursuant to 4 M.R.S.A., Sec. 57 as amended and M.R.C.P., Rule 76B questions have been certified to the Law Court by the District Court of the United States for the District of Maine.

The material facts have been settled in the District Court and are not in dispute. The plaintiff married a wage-earner, one William Pierce now deceased, in Boothbay Harbor, Maine on November 26, 1908. They were legally divorced on May 3, 1926. The plaintiff continued to reside in Boothbay Harbor and her former husband left the state. Shortly thereafter, the latter returned to Maine and he and the plaintiff resumed living together. They continued this relationship at all times as residents of Maine, until the decedent's death on May 11, 1961.

Plaintiff now claims a widow's insurance benefit under the provisions of Sec. 202(e) (1) of the Social Security Act, 42 U.S.C., Sec. 402(e) (1). Sec. 216(h) (1) (A) of the Act, 42 U.S.C. Sec. 416(h) (1) (A) provides in pertinent part:

"An applicant is the * * * widow * * * of a fully * * * insured individual for purposes of this subchapter if the courts of the State in which such insured individual * * * was domiciled at the time of death * * * would find that such applicant and such insured individual were validly married at the time (such insured individual) died. If such courts would not find that such applicant and such insured individual were validly married at such time, such applicant shall, nevertheless be deemed to be

the * * * widow * * * of such insured individual if such applicant would, under the laws applied by such courts in determining the devolution of intestate personal property, have the same status with respect to the taking of such property as a * * * widow * * * of such insured individual."

The legal question certified to the Law Court is:

"Is a common law marriage valid under the laws of the State of Maine?"

Although this issue has never been specifically determined in Maine, we find no indication in either the statutes or the case law that such "marriages" are deemed valid for any purpose. 19 M.R.S.A., Secs. 1 to 122 inclusive provide detailed requirements pertaining to the solemnization of marriages. An exception is provided in the case of marriages "solemnized among Quakers or Friends" *and none other*.

Many rights and responsibilities flow from a valid marriage, not only as between the parties to the marriage contract, but as between them and their children and as between them and the public. Sound public policy dictates that there be a minimum of uncertainty as to whether or not a vald marriage exists. The meeting of statutory requirements has this desirable effect.

As early as 1822 our Court in Ligonia v. Buxton, 2 Me. 102 was faced with the effect upon a pauper settlement of the validity or invalidity of a marriage. A man and woman had contracted what purported to be a statutory marriage and thereafter cohabited as man and wife for six years. The Court in declaring the marriage void as solemnized "in direct violation of a statute long in force, and universally known," gave no consideration whatever to the possible existence of a legal common law marriage. Yet the existence of such a married status, if valid, would have affected the result reached by the Court. Ligonia furnishes a good example of the many rela-

tionships between married persons and the public which flow from a valid married status.

Where proof of adultery depended on proof of a valid subsisting marriage, the Court in State v. Hodgskins (1841) 19 Me. 155 gave no heed to the fact that the respondent and his alleged wife had cohabited for some years "immediately following the performance of the ceremony, till they had nine children." The Court required proof that the statutory requirements for a valid marriage had been met.

■ Our mother State, the Commonwealth of Massachusetts, expressly repudiated the validity of common law marriages in Commonwealth v. Munson (1879) 127 Mass. 459, 466. After carefully tracing the statutory development from 1639 for a period of about two hundred years, the Court concluded:

"Under all changes in the form of the statutes it has always been assumed in this Commonwealth, and in the State of Maine, which was originally a part thereof, that (except in the single case of Quakers or Friends * * *) a marriage which is shown not to have been solemnized before any third person, acting or believed by either of the parties to be acting as a magistrate or minister, *is not lawful or valid for any purpose."* (Emphasis ours)

The Massachusetts Court was also of the view that if the law were to be changed to permit a valid marriage to be effectuated "by the mere private contract of the parties, without going before any one as a magistrate or minister," that should properly be "a matter for legislative, and not for judicial consideration." We are of the same view.

■ The question certified to us by the United States District Court must be answered in the negative.

The clerk will transmit these instructions to the District Court of the United States, District of Maine. All concur.

So ordered.