**HIRAM RICKER & SONS**

v.

**STUDENTS INTERNATIONAL MEDITA-
TION SOCIETY.**

Supreme Judicial Court of Maine.

July 24, 1975.

Pierce, Atwood, Scribner, Allen & Mc-Kusick, by Vincent L. McKusick, James G. Good, Portland, Bernard A. Dwork, Enid M. Starr, Boston, Mass., for appellants.

Bernstein, Shur, Sawyer & Nelson, by Gregory A. Tselikis, Portland, Deutsch & Krasnow, by George R. Halsey, Robert I. Deutsch, Boston, Mass., for appellee.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

POMEROY, Justice.

This case is before us on a certification of questions of law from the District Court of the United States, District of Massachusetts, pursuant to *4 M.R.S.A. § 57.* The certification was directed by the United States Court of Appeals for the First Circuit in *Hiram Ricker & Sons v. Students International Meditation Society,* 501 F.2d 550 (1st Cir. 1974.)

The *"Nature of the Case"* and *"Statement of Facts"* set out in the certificate may be summarized as follows:

The plaintiff-appellee, Hiram Ricker & Sons, a Maine corporation, brought an action for breach of contract in the District Court of Massachusetts, claiming $77,508.-36 due from the defendant-appellant, SIMS, a California charitable corporation. Jurisdiction is based on diversity of citizenship.

Ricker and SIMS had entered into an agreement wherein Ricker agreed to furnish lodging and food to approximately 1,000 SIMS students at a one-month teacher training course to be held at Ricker's premises in Poland Spring, Maine, from June 26th to July 28th, 1970.

The Poland Spring's complex, once a fashionable spa for those with the leisure and means to enjoy its amenities, was sold in 1962 to Hiram Ricker & Sons. Ricker subsequently leased the premises to the Federal Government for a Job Corps residential installation.

In December 1969 the installation was closed. Not long thereafter Ricker agreed with SIMS to reopen the buildings vacated by the Job Corps and to furnish both lodging and food to SIMS' students. The one-month course was held at the Poland Spring complex as scheduled, and at the conclusion of the course, SIMS had paid Ricker $185,000.00. A dispute arose between the parties as to the amount of the outstanding balance due Ricker on the contract, and this action followed.

Ricker premised its right to recover on alternative theories; that the money was due either on the contract or in quantum meruit. SIMS responded with a counterclaim for the $185,000.00 it had paid Ricker.

A jury trial resulted in a verdict for Ricker in the amount of $65,780.00 and against SIMS on its counterclaim.

At trial, the evidence conclusively established that Ricker's victualer's license, (*30 M.R.S.A. § 2751*), issued in December 1969, had expired in May 1970. Similarly, the record established that Ricker did not have sanitation licenses for all its premises

during the entire period,[1] (*22 M.R.S.A. § 2482*). On appeal the First Circuit Court recognized that the last time the Maine Court had had occasion to decide whether failure to comply with licensing statutes precluded recovery on a contract was over three-quarters of a century ago in a case involving $28.00 due an innkeeper. (*Randall v. Tuell,* 89 Me. 443, 36 A. 910 (1897)). The Court was understandably in doubt as to the continuing vitality of the rule enunciated in *Randall,*

"... *that where a license is required for the protection of the public, and to prevent improper persons from engaging in a particular business, and the license is not for revenue merely, a contract made by an unlicensed person in violation of the act is void.*" 36 A. at 910.

In 1965, Maine enacted its certification statute to provide a mechanism by which the Federal Courts, District and Appellate, could present questions of state law directly to the Supreme Judicial Court sitting as the Law Court. *4 M.R.S.A. § 57.* The Court has acted on four certification cases since enactment of the statute.[2] Each experience with the procedure has occasioned our exploration of the purpose and scope of certification and we consider it to be appropriate now to review the legal principles which have emerged from our inquiries.

■ 1. The action of the Law Court in accepting and deciding questions of law certified from a Federal Court is a valid exercise of *"judicial power."* 223 A.2d at 832.

■ 2. Where the certified question of State law projects alternatives of answer, at least one of which, were it to be the answer of this Court, would have controlling impact on a decision of the merits of the cause generally, this Court will answer the question presented. 220 A.2d 248; 254 A.2d 46; 320 A.2d at 674.

■ 3. The Court will respond to questions only when it is apparent from the certification itself that all material facts have been either agreed upon or resolved, and the case is in such posture that our decision will, in at least one alternative, be *"determinative of the cause."* 320 A.2d 674–75 n. 10.

■ 4. *"Determinative of the cause"* encompasses *any* disposition by which the Federal controversy *is terminated.* 320 A.2d at 677.

■ 5. It is the stated policy of this Court that when there is involved in a Federal cause a question whether a Maine statute violates the Constitution of Maine, and:

1) the Federal Court considers the question to lie within its *"pendent"* jurisdiction to decide;

2) the Maine Constitution affects the statute's validity differently from the Federal Constitution invoked to invalidate it; and

3) one alternative answer by this Court will finally dispose of the Federal proceeding thereby avoiding

Federal decision of the Federal constitutional issue, this Court will give liberal and plenary implementation to the certification process. 320 A.2d at 683–684.

We note at the outset the claim advanced by the appellee that this case is not yet in such posture that it may properly be considered by this Court. Specifically, it is appellee's position that a threshold issue as to whether or not compliance with the

---

1. Two of the seven buildings in the complex were inspected and issued licenses halfway through the SIMS course. One of the licenses issued was made *"conditional"* due to discovered health hazards.

2. *Norton v. Benjamin,* Me., 220 A.2d 248 (1966); *In Re Richards,* Me., 223 A.2d 827 (1966); *Pierce v. Secretary of Health, Education, and Welfare,* Me., 254 A.2d 46 (1969); *White v. Edgar,* Me., 320 A.2d 668 (1974).

licensing statutes was *required* must be addressed by us before consideration of the questions certified. This is so appellee says, because the Federal Court never resolved that issue.

Questions #1 and #2 of the instant certification ask us to decide whether appellee's *"non-compliance with the victualer's license requirement"* and *"partial non-compliance with the sanitation license requirement"* preclude its recovery either on the contract or in quantum meruit.

Question #3 asks whether the substantial performance exception to the requirement of complete performance would apply *"If Ricker is permitted to recover despite its lack of licenses;"* and if so, whether the jury should be instructed to consider *"the degree of the plaintiff's compliance with the license laws."*

We consider it to be *"apparent from the certification itself"* that the question whether the licenses involved were required by Ricker must necessarily have been decided in the affirmative by the Federal Court prefatory to its reaching the issue of whether non-compliance or partial compliance would preclude recovery for services rendered.

Thus, the issue squarely presented by this certification is whether or not this Court's decision in *Randall v. Tuell, supra,* is still viable, thus barring the right of appellee to recover the value of the services and lodging it supplied the appellant.

The licensing statute construed in *Randall* was identical to the one now in force save for omission of the words *"or tavernkeeper."*

The present statute provides that

*"No person shall be a common innkeeper, victualer or tavernkeeper without a license, under a penalty of not more than $50." 30 M.R.S.A. § 2751*

The *Randall* Court construed the language of the statute as demonstrating a

legislative intent *"to prevent improper persons from engaging in a particular business"* in the interest of public protection. Had the statute been enacted for revenue purposes only instead of being prohibitory, the Court concluded, the innkeeper could properly recover on his contract even though he was in violation of the licensing requirement.

*Randall* has been cited by this Court in only five decisions since it was decided. In *Black v. Security Mutual Life Association,* 95 Me. 35, 49 A. 51 (1901), the Court was asked to decide whether an unlicensed insurance broker could recover from his Company commissions earned under a contract of employment with the Company.

The relevant licensing statute provided:

*" . . . if any person solicits, receives or forwards any risk or application for insurance to any company, without first receiving such license, or fraudulently assumes to be an agent and thus procures risks and receives money for premiums, he forfeits not more than fifty dollars for each offense; but any policy issued on such application binds the company if otherwise valid." 95 Me. 35, 36, 49 A. 51, 52.*

Relying on *Randall,* the Court held recovery was barred despite the fact that the licensing statute expressly provided any *policy* issued by an unlicensed broker was not void.

*"The purpose of the statute is undoubtedly for the protection of the public. It is clearly not for revenue. The license fee required was only the sum of two dollars. True, the statute referred to provides that a policy issued in such a case shall not thereby be void, but the contract of insurance is not the one under consideration here; it is the contract between the company and the plaintiff by virtue of which the latter performs services in obtaining applications for insurance, which the statute prohibits, unless the person performing such service*

has a license therefor." 95 Me. 35, 37, 49 A. 51, 52.

In *Donahue v. City of Portland*, 137 Me. 83, 15 A.2d 287 (1940), the precise issue before the Court was whether an ordinance which imposed a different annual fee on those victualers who sold beer from those who did not was discriminatory and void. In upholding the ordinance, the Court discussed *Randall* only collaterally as support for the proposition that an ordinance passed in pursuance of statutory authority is presumptively valid.

The *Randall* decision was distinguished in *Lipman v. Thomas*, 143 Me. 270, 61 A.2d 130 (1948). The *Lipman* Court had before it the question whether failure to file a partnership certificate in violation of a statute barred recovery on account for goods supplied by the partners.

Deciding that recovery was available because the purpose of the filing provision was not to protect those who obtained credit from the partnership, the Court went on to more fully describe the statute.

*"The statute does not disclose directly or by implication that it was the intention of the legislature to invalidate business transactions otherwise valid because of the failure of the plaintiffs to comply with its provisions. The statute does not declare the transaction void. It does not forbid doing business before complying with its provisions. It does not forbid recovery. It does not provide for forfeiture. . . .*

*"The failure of the plaintiffs to file the certificate merely subjected them to the penalty provided, namely, a fine of $5 for each day of noncompliance after commencing business. No further penalty is attached."* 143 Me. 270, 274, 61 A.2d 130, 132.

*Randall* was not controlling the *Lipman* Court concluded, because the *Randall* Court had found that the purpose of the statute involved in *Randall* would have been "wholly thwarted unless the contracts were held void."

The most recent decision to discuss the *Randall* rule is *Thacher Hotel, Inc. v. Economos*, 160 Me. 22, 197 A.2d 59 (1964). Chief Justice Williamson, speaking for the Court, declined to extend the application of *Randall* to the circumstances of the case then before it. In *Thacher*, the plaintiff hotel had contracted with the defendant to manage the hotel's dining room. When the hotel sued for an unpaid balance due under the *"management contract,"* the defendant claimed the contract was illegal because the plaintiff, not being a *"bona fide hotel"* as defined by the licensing statute, should not have been granted a liquor license. Chief Justice Williamson noted first that, absent the applicability of the liquor law, there was nothing inherently wrongful about the parties' contract. Moreover, the contract was not entered into in furtherance of an unlawful purpose so as to be manifestly against public policy.

Critical to the Court's determination that recovery was not barred, however, was the conclusion that the license itself was valid. That being so, *Randall*, although cited with apparent approval as illustrative of the principle of non-recovery where the claim is based on an illegal contract, was not decisive.

It is clear from the above discussion that the rule announced in *Randall v. Tuell, supra*, nearly a century ago, while neither rejected nor modified since, has been found controlling on only one other occasion.[3] Even more significant, however, is the fact that the rule has never been re-examined in light of a similar factual framework to that in which the case now before us is cast.

The statute which occasioned both *Randall* and the case now before us imposes a specific penalty upon a *"common innkeeper or victualer,"* who fails to secure an annual license to engage in his occupation.

---

3. *Black v. Security Mutual Life Association, supra.*

The provision is part of a comprehensive statutory scheme which describes the composition and duties of the *"licensing board"* (*30 M.R.S.A. § 2752*); provides for the securing of a bond and payment of recording fees (*§ 2754*); sets out the conditions under which a license may be revoked or suspended (*§ 2757*); and describes the restrictions and regulations under which a licensee is obligated to conduct his business (*§ 2801* et seq.).

The statute further provides the mechanism for prosecuting *violations* of the licensing requirement by authorizing both the licensing board and "[a]*ny citizen of the State"* to prosecute *"by complaint, indictment or civil action."* (*§ 3001*). All penalties in such actions, recoverable as often as the offense is repeated, inure to the benefit of the town where the offense is committed. *30 M.R.S.A. § 3001*; *State v. Johnson,* 65 Me. 362 (1876).

We note at the outset there is no provision in the innkeeper licensing statute which imposes any penalties or forfeitures *in addition to* the fifty dollars prescribed in *Section 2751* for failure to secure a license. We also note there is no express provision authorizing injunctive relief. This is in contradistinction to *Section 2504,* for example, which provides for the licensing of persons conducting closing-out sales. That statute expressly provides for injunctive relief and purports to confer jurisdiction in the Superior Court.[4]

The Court in *Randall v. Tuell, supra,* rested its decision to bar recovery on the contract by a non-complying innkeeper on

its conclusion that the statute was intended to prohibit the exercise of the business, and by inference, recovery on any contract entered into in contravention of such prohibition.

*"If the statute in question was enacted for revenue purposes only, instead of being prohibitory, the plaintiff might properly recover. But we are satisfied that such was not the intention of the legislature. The statute being by implication prohibitory by reason of the penalty attached, the plaintiff is precluded from recovering. Basing his action upon a clear violation of the statute, he cannot successfully invoke the aid of the court."* 89 Me. 443, 448, 36 A. 910, 911.

We do not so construe the licensing provision. In the absence of any *express* legislative intention to declare contracts made and performed by unlicensed innkeepers void, we will not infer such intention.[5]

The statute fixes its own penalties. The additional penalty of non-enforceability of agreements is a judicial engraftment we now expressly reject as unduly harsh and unsound.

*"Why should one party to a contract be allowed to avoid the payment of debts he has contracted to pay and thus gain an unconscionable advantage because the other party deliberately, or through inability ·or mere oversight, has failed to discharge an obligation to the city when there is available to the city . . . . a . . . remedy for the wrong . . . .. As the law has been construed for a long*

---

4. See also *Section 2451* et seq., (licensing of auto junk dealers), imposing *criminal* penalties for failure to secure the necessary permit.

5. We note that in certain instances where the Legislature has intended that the public be protected against the potential fraud and incompetence of unlicensed persons, it has expressly mandated that contracts made in breach of the statute are not enforceable by the non-complier. See for example, *4 M.R.S.A. § 807,* denying recovery for services rendered to an attorney who has not secured the requisite certificate of qualification; *20 M.R.S.A. § 1754,* barring those who teach a public school without first obtaining a state teacher's certificate from receiving pay therefor, and directing forfeiture of any amounts received as wages for such illegal teaching; *32 M.R.S.A. § 4003,* making it unlawful for a licensed real estate broker to share his commission with an *unlicensed* broker *"in consideration of services performed or to be performed by such unlicensed person."*

*time by this and most other courts of last resort, it appears to furnish an inducement to evil-disposed persons to watch opportunities to contract with any one upon whom a license tax has been imposed at a time when, for perhaps only a day, he has neglected to pay his tax, and thus acquire merchandise or service without payment therefor."* Manker v. Tough, 79 Kan. 46, 98 P. 792, 795 (1908).

The *Manker* Court went on to reason that the denial of a remedy on such a contract is *"in effect, tantamount to a penalty or fine in the amount the party by the terms of the contract is entitled to recover. . . ."* Such a rule, allowing one party to penalize another for his own benefit for an act which occasioned him no loss, the Court concluded, *"would seem to be exotic to the jurisprudence of this state, . . ."* 98 P. at 795.

Cases in other jurisdictions which have discussed the question of enforceability of contracts under similar licensing statutes demonstrate a reluctance to apply *Randall*-type rules where such application would produce an unduly harsh result. In some cases, the decision turns on the same distinction made in *Randall*, viz. whether the purpose of the statute is the collection of revenue (in which case the express statutory penalties are held to be exclusive), or the protection of public health and safety (in which case non-enforceability of the bargain may be inferred as an additional penalty). See for example, *Patterson v. Southern R. Co.*, 214 N.C. 38, 198 S.E. 364 (1938); *Albertson & Co. v. Shenton*, 78 N.H. 216, 98 A. 516 (1916); *Sunflower Lumber Co. v. Turner Supply Co.*, 158 Ala. 191, 48 So. 510 (1909). See also 6A *Corbin on Contracts* § 1512, at 710–713. Other courts have eschewed such distinctions, but have allowed recovery under circumstances where equitable considerations weighed heavily against the imposition of a forfeiture. *John E. Rosasco Creameries, Inc. v. Cohen*, 276 N.Y. 274, 11 N.E.2d 908 (1937), ($11,000 milk dealer's contract); *Southfield v. Barrett*, 13 Cal. App.3d 290, 91 Cal.Rptr. 514 (1970), ($40,000 contract); *Schloss v. Davis*, 213 Md. 119, 131 A.2d 287 (1957).

In some instances, the Courts have circumvented rigid application of the rule by determining that a license was not required because the transaction was an isolated one and the plaintiff not really practicing the profession or engaged in the business described in the licensing statute. *Barriere v. Depatie*, 219 Mass. 33, 106 N.E. 572 (1914); *Kolb v. Burkhardt*, 148 Md. 539, 129 A. 670 (1925).

Finally, a few unlicensed plaintiffs have been allowed to recover, on a theory of quantum meruit, for the fair value of their work where such recovery would avoid inequities and unjust enrichment. *Wood v. Black*, Fla., 60 So.2d 15 (1952); *Gatti v. Highland Park Builders*, 27 Cal.2d 687, 166 P.2d 265 (1946); *Lindner Appraisal Corp. v. H. Mabel Frewil Corp.*, 72 Misc.2d 1041, 340 N.Y.S.2d 242 (1973).

We are satisfied it would be unjust and inequitable for us to rule that Ricker's noncompliance with the licensing statute makes its contract with SIMS void. We will not so hold in any case unless the Legislature has mandated such result by specific terms in the Statute. To the extent *Randall v. Tuell, supra,* and *Black v. Security Mutual Life Association, supra,* held, otherwise, they are overruled.

In discussing whether a statute imposing a penalty upon the peddling of wares impliedly rendered any sales void, this Court has said:

*"It does not make the sale void, unless by implication, and that a forced one. But forfeitures and the confiscation of honest debts are not to be implied. They must be the results of express legislation, and not a matter of inference . . . . When the unlawfully traveling peddler has paid the fine imposed for his unlawfull traveling and his 'property thus unlawfully carried' round by him for sale*

has been declared forfeited, the penalties of the statute are exhausted. It would be judicial legislation to add to the penalties of the statute." *Burbank v. McDuffee*, 65 Me. 135, 136–37 (1876).

See also *Harris v. Runnels*, 12 Howard (U.S.) 79, 13 L.Ed. 901 (1851).

■ In view of the foregoing discussion, we answer in the negative to the first part of the first certified question:

"1. Does plaintiff-appellee's non-compliance with the victualer's license requirement of *Me.Rev.Stats.Ann.*, Title 30, § 2751, preclude its recovery for the claimed balance due on the contract?"

The second part of that question:

"Does such non-compliance preclude recovery in quantum meruit?"

need not be reached.

The second certified question relates to Ricker's partial non-compliance with the sanitation license requirement of *22 M.R.S.A. § 2482*. That statute provides:

"No person, corporation, firm or copartnership shall conduct, control, manage or operate, for compensation, directly or indirectly, any catering establishment, or establishments preparing food."

Like the innkeeper provision, there is a penalty imposed for failure to secure the requisite sanitation license. *22 M.R.S.A. § 2487*.

We consider the same reasoning which led us to conclude that Ricker's non-compliance with the innkeeper licensing statute did not bar its recovery on the contract, is applicable as well to Ricker's failure to comply with the sanitation statute. The statute directs a specific penalty; and we cannot infer any in addition thereto.

■ Part one of the second certified question, therefore:

"Does plaintiff-appellee's partial non-compliance with the sanitation license requirement of Me.Rev.Stats.Ann. Title 22, § 2482, preclude its recovery for the claimed balance due on the contract?"

must be answered in the negative.

Our response to the first part of the second certified question obviates the necessity of our reaching the second and third parts of that question:

"Does such non-compliance preclude recovery in quantum meruit?"

"Would partial compliance with said statute permit partial recovery?"

In the third question certified to this Court, we are asked:

"If Ricker is permitted to recover despite its lack of licenses, would the substantial performance exception to the requirement of complete performance apply in these circumstances? If so, should the jury be instructed to consider the degree of the Plaintiff's compliance with the license laws with respect to an issue of whether or not Ricker's performance was substantial?"

■ We answer both parts of this question in the negative. We have said Ricker's failure to secure the requisite licenses has no bearing whatsoever on the enforceability of the contract.

It follows then, such failure does not effect a limitation on the extent of recovery.

Deciding as we do that Maine law does not preclude Ricker from recovering on the contract, we have no need to reach the issue raised in the fourth certified question:

"If Ricker is precluded from recovery in both contract and quantum meruit, is it liable to SIMS for restitution of the $185,000 already paid by SIMS for the facilities and services?"

The Clerk will transmit these instructions to the District Court of the United States, District of Massachusetts.

So ordered.

WEATHERBEE, J., did not sit.

All Justices concurring.