GERRY POTTER'S STORE FIXTURES, INC. *v.*
ZEV COHEN T/A NATURALLY GOOD
YOGURT SHOP

[No. 702, September Term, 1979.]

*Decided July 9, 1980.*

The cause was submitted on briefs to MORTON, MASON and WILNER, JJ.

Submitted by *Melvin L. Schneider* for appellant.

Submitted by *Paul T. Stein* for appellee.

MASON, J., delivered the opinion of the Court.

In this case we are asked to decide whether the trial court erred in determining that the written contract between appellant, Gerry Potter's Store Fixtures, Inc. (Potter) and appellee, Zev Cohen, t/a Naturally Good Yogurt Shop (Cohen) was illegal and unenforceable because Potter held himself out as an architect, used the designation of architect, and practiced architecture in violation of Article 43, section 515 of the Maryland Code (1957, 1980 Repl. Vol.) which provides:

> "It is hereby declared that in order to safeguard life, health, public safety and property and to promote the public welfare by requiring that only properly qualified persons shall hold themselves out as architects or be permitted to use the designation of 'architect' or be permitted to practice architecture in the State of Maryland, such persons shall be compelled to submit evidence that they are qualified to practice architecture and shall be registered as hereinafter provided."

Section 516 (b) defines the term "architect" as a person registered by the Maryland Architectural Registration Board for the practice of architecture, and section (e) defines the term "practice of architecture" as follows:

> "[A]ny service or creative work the performance of which requires architectural education, training and experience in such services as consultation, investigation, evaluation, planning, architectural design and preparation of related documents, coordination of services furnished by structural,

civil, mechanical, electrical engineers and other consultants in connection with the construction of any building or integral part or parts thereof or any addition or alteration thereto."

We think it clear that section 515 proscribes any person not registered by the Maryland Architectural Registration Board for the practice of architecture in this State from holding himself out as an architect, using the designation of architect, or practicing architecture. The criminal sanction for engaging in the practice of architecture without a license is a fine not exceeding $3,000.00 or imprisonment of not more than one year, or both. Section 526, Article 43.

The statute does not speak to the validity or enforceability of a contract entered into by an unregistered person. However, in *Snodgrass v. Immler,* 232 Md. 416 (1963) this question was specifically answered. There Snodgrass held himself out as an architect and performed architectural services for Immler who knew he was unregistered. In denying Snodgrass from recovering under the contract for architectural services, the Court of Appeals quoted the following from *Goldsmith v. Mfrs.' Liability I. Co.,* 132 Md. 283, 286 (1918):

> " '* * * a contract entered into by an unlicensed person engaged in a trade, business or profession, required to be licensed, and made in the course of such trade, business or profession, can not be enforced by such person, if it appears that the license required by the statute is, in whole or in part, for the protection of the public, and to prevent improper persons from engaging in such trade, business or profession.' "

*Id.* at 421-422.

The Court also quoted with approval from the case of *Kirschner v. Klavik,* 186 A.2d 227 (1962) where the Municipal Court of Appeals for the District of Columbia in

a case denying a claim for architectural services by an unregistered architect, said:

> " 'Generally, a contract made in violation of a Maryland statute designed for police or regulatory purposes is void and confers no rights upon the wrongdoer. Neither can the wrongdoer sue in quasi-contract for the value of his services or for the value of the benefits conferred upon the other party. This is true even where, as was shown here, the appellants entered into the contract with appellee knowing he was not duly licensed under the local statute as an architect.* * * ' "

*Id.* at 423.

Authorities in most jurisdictions have reached the same conclusion.

See Sweet, *Legal Aspects of Architecture, Engineering and the Construction Process,* section 31.07 (1970); *see also Harry Berenter, Inc. v. Berman,* 258 Md. 290 (1970) where the Court of Appeals denied enforcement of a mechanics lien for work done and materials furnished because the contractor was not licensed pursuant to the Maryland Home Improvement Law, Code (1957), Article 56, §§ 245-269.

In this case, Potter, a licensed contractor in Prince George's County, entered into a written agreement[1] with Cohen to convert a clothing store into a yogurt shop. Prior to signing the contract, Potter prepared certain lay-out drawings to clarify for Cohen the placement of fixtures, color scheme and type of materials, and to use in procuring the required building and other permits. The contract price for the renovation was $10,000. Cohen paid Potter $7,600, but

---

1. "(1) Take old Store.
(2) Construct the new store supplying the tile floors, new partitions, new ceiling, all paint and wall coverings, all lighting and electric for single phase equipment, and the counters and back counters of plastic laminat construction. Also the mirrors and roll up grill at the front of store.
(3) Installing of equipment is included but the equipment is not."

refused to pay the $2,400 balance. Potter then brought suit for the remainder of the contract price.[2]

According to the testimony of Potter, he has known Cohen for approximately five years and had performed several jobs for him. Although he took architectural drawing, mechanical drawing and drafting in high school, he did not hold himself out as an architect and Cohen knew he was not an architect. Moreover, the work done for Cohen did not require the services of an architect, nor did he charge Cohen for the drawings he prepared. Potter admitted that in preparing the contract on a standard printed form, he typed his initials "GWP" on that part of the contract designated for the name of the architect. He did not explain, nor was he asked to explain, the reason he typed his initials on that part of the contract.

In granting Cohen's motion to dismiss after Potter had presented his case, the court said:

> "However, with respect to the motion to dismiss on the ground that the plaintiff has held himself out to be an architect, the Court is in great sympathy with the Plaintiff's actions in this matter and feels that the drawings made undoubtedly were for the procurement of certain licenses, depicting the type of materials, the color schemes and quality of materials. The damaging evidence however is the fact that by the Plaintiff's own admission and on his contract prepared by him, he has classified himself as an architect and as the architect's initials 'GWP' being George W. Potter under the classification of an architect, and when he holds himself out to be an architect and actually prepares services and creative work with respect to this particular job, he was in fact an architect and I'll have to grant the motion to dismiss. The statute is very harsh and

---

2. Potter also brought suit and was awarded a judgment in the amount of $650 for work done on a "corndog" machine pursuant to an oral agreement. This judgment is not an issue on appeal.

provides nothing even for quantum meruit remuneration.

"The motion to dismiss except for judgment for Plaintiff in the amount of $650 is granted."

Although the trial court apparently found that Potter held himself out as an architect, used the designation of architect and engaged in the practice of architecture, the undisputed evidence shows that Potter was not an architect, did not hold himself out as an architect, and did not induce Cohen by conduct or any other means to believe he was an architect. Moreover, we do not believe the work performed by Potter in remodeling and converting a clothing store into a yogurt shop is the type of service or creative work requiring architectural education, training and experience as contemplated by the statute. The work and services contracted for and performed by Potter were more akin to that of a building contractor than that of an architect. Further, even if we assume that some of the work incidental to the performance of the contract was architectural in nature, section 520 of Article 43 exempts from registration as an architect "those persons customarily engaged in contract work who perform the administration of construction contracts, but no person shall use the designation 'architect' unless licensed in accordance with the provisions of this subtitle."

Having determined that Potter did not hold himself out as an architect and the work and services performed did not amount to the practice of architecture, we turn to what we consider the critical issue — did Potter use the designation of architect in violation of the statute?

We think it clear that under a literal interpretation of the statute, when Potter typed his initials in a space provided in the contract for the name of the architect, he used the designation of architect. We do not believe, however, that the use of the term "architect" under the facts and circumstances of this case is a sufficient basis, standing alone, to preclude Potter from recovering under the contract for the work and services performed. There is no evidence

that Potter used the term "architect" as part of his business name or title or that he represented himself to the public as an architect.

The evident purpose of the statute is to protect the public from misrepresentation and fraud. There was no misrepresentation or fraud here. In *Schloss v. Davis*, 213 Md. 119 (1957), the Court of Appeals said:

> "It is the general rule that recovery will be denied if a contract is illegal in purpose or made by a person lacking the legal qualifications to contract. *F.S. Bowen Elec. Co. v. Foley*, 72 S.E.2d 388 (Va.). Cf. *Goldsmith v. Mfgrs' Liability I. Co.*, 132 Md. 283. See also Note 118 *A.L.R.* 676. But there is a recognized exception in cases where a denial of recovery would impose a penalty out of all proportion to the public good, particularly where the violation is not of a serious nature and merely incidental to the performance of the contract." (Other citations omitted.) *Id.* at 125.

We think the violation here falls within the ambit of the above exception. Accordingly, we reverse.

*Judgment reversed.*
*Costs to be paid by appellee.*